**Merilyn COOK, et al., Plaintiffs,**

v.

**ROCKWELL INTERNATIONAL CORPORATION, a Delaware corporation, and the Dow Chemical Company, a Delaware corporation, Defendants.**

**Civ. A. No. 90–K–181.**

United States District Court,
D. Colorado.

March 29, 1993.

Bruce H. DeBoskey, Steven W. Kelly, Silver & DeBoskey, P.C., Denver, CO, Ronald Simon, David Elbaor, Richard J. Fiesta, Connerton, Ray and Simon, Washington, DC, Merrill Davidoff, David Berger, Peter B. Nordberg, John R. Taylor, Berger & Montague, P.C., Philadelphia, PA, Robert Golten, Fredericks & Pelcyger, Boulder, CO, Stanley M. Chesley, Waite, Schneider, Bayless, & Chesley Co., L.P.A., Cincinnati, OH, for plaintiffs.

Mark S. Lillie, John A. DeSisto, Kirkland & Ellis, Denver, CO, David M. Bernick, Kevin T. Van Wart, Kirkland & Ellis, Chicago, IL, Sidney Rooks, The Dow Chemical Co., Midland, Mich., for defendant Dow Chemical Co.

Joseph J. Bronesky, Christopher Lane, Sherman & Howard, Denver, CO, John D. Aldock, James R. Bird, Michael S. Giannotto, Franklin D. Kramer, Timothy P. Brooks, Shea & Gardner, Washington, DC, for defendant Rockwell Intern. Corp.

Dick Kaufman, Asst. U.S. Atty., Denver, CO, for State.

Daniel R. Satriana, Sean R. Gallagher, Hall & Evans, Denver, CO.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This case is before me on: (1) Plaintiffs' appeal from two orders entered by Magistrate Judge Abram on December 30, 1992, and (2) Defendants Rockwell International, Inc. and Dow Chemical Company's motions to dismiss the case under Rules 11 and 37. Both Plaintiffs' and Defendants' motions focus on the same fundamental question: whether Plaintiffs in this toxic tort litigation should be permitted further discovery regarding the release of hazardous substances at Rocky Flats, or whether this action should be dismissed because they are unable to state with certainty that they have been exposed to potentially dangerous amounts of specific hazardous substances.

This is a technically complex case. The information necessary to support Plaintiffs' factual allegations has been largely within the control of the Defendants and third parties. To date, Plaintiffs have had limited discovery and little time to analyze the results of that discovery. Therefore, despite the deferential standard governing review of the magistrate judge's discovery orders, I will modify the orders, deny the motions to dismiss, and establish further discovery and case prosecution deadlines through a scheduling or pretrial order.

### I. *Facts.*

On January 30, 1990, a number of individuals, Bank Western and the Field Corporation (a subsidiary of Bank Western) (collectively, "Plaintiffs") filed this putative class action. These parties live on or hold an interest in real property located near the Rocky Flats weapons production facility located northwest of Denver, Colorado. Rocky Flats is

owned by the U.S. Department of Energy ("DOE"). Defendant Dow operated Rocky Flats from its inception in the early 1950's to June 30, 1975. Defendant Rockwell operated it from the latter date to December 31, 1989. EG & G Rocky Flats, Inc. ("EG & G") is currently the facility's contractor.

Plaintiffs allege that during their operation of Rocky Flats, Dow and Rockwell released radioactive and non-radioactive substances into the surrounding area which damaged their property and could have adverse health consequences. In their second amended complaint, Plaintiffs request class certification [1] and plead claims under Colorado common law, the Price Anderson Act (which incorporates common law), see 42 U.S.C. §§ 2014(hh), 2210, and the Comprehensive Environmental Response Compensation and Liability Act (CERCLA), see 42 U.S.C. § 9607. Their identical common law and Price Anderson claims sound in negligence, strict liability, private nuisance, and outrageous conduct. They seek damages on these claims for property and other economic harm, mental and emotional distress and medical monitoring, plus exemplary damages. They request response costs under CERCLA.

The discovery history of this case is not pretty. Plaintiffs first served discovery on April 19, 1990, shortly after the case was filed. Dow and Rockwell quickly moved to dismiss or for summary judgment.[2] On May 14, 1990, they also moved for a protective order pending resolution of these dispositive motions, effectively staying discovery by operation of then Local Rule 403.A. The motion for protective order was never adjudicated. Once the motions to dismiss and for summary judgment were resolved, both parties suggested various discovery proposals. Plaintiffs moved for a case management order and Defendants again moved for a stay of discovery, arguing it should not be permitted because the case had no factual basis. The court did not rule on these motions. For the most part, discovery did not commence until this past summer.

On April 16, 1992, the case was referred to Chief Magistrate Judge Abram for a scheduling conference and entry of a discovery scheduling order. On May 15, 1992, Plaintiffs filed a notice in this case that they had petitioned the court in United States v. Rockwell International Corp., No. 92–CR–107, for disclosure of certain grand jury materials in that criminal case. Chief Judge Finesilver denied the petition on May 20, 1992, finding that the Plaintiffs had not advanced "good and sufficient" reasons for disclosure of the materials.[3]

On June 29, 1992 the magistrate judge conducted a scheduling conference, and the following day entered an order requiring Defendants to produce "the databases and indices that exist as to the Church, ChemRisk, Doty & Associates and grand jury documents." [4] Plaintiffs, in turn, were ordered to

---

1. Plaintiffs allege two classes. The Landowner and Business Class is represented by individuals, Bank Western and the Field Corporation, all of whom own or hold an interest in real property located near Rocky Flats. This subclass seeks $250,000,000 in damages for economic harm to property values as a result of hazardous substances released from Rocky Flats. The Medical Monitoring subclass consists of persons allegedly exposed to hazardous substances who seek the creation of a $150,000,000 fund for the regular screening, early detection and prevention of cancer and other latent diseases. This subclass does not allege any personal injury or damages from the exposure per se. Both classes seek the payment of CERCLA response costs to members who have incurred them, exemplary damages of $300,000,000 and injunctive relief. Class certification proceedings have not yet taken place.

2. In two published opinions, Judge Babcock granted Rockwell and Dow's motions to dismiss

several claims alleged in Plaintiffs' first and second amended complaints. See Cook v. Rockwell Int'l Corp., 755 F.Supp. 1468, 1472–76 (D.Colo. 1991) (dismissing CERCLA claims for future monitoring costs and costs for monitoring health effects of hazardous releases, and common law claims for general scientific studies, misrepresentation and concealment and injunctive relief); Cook v. Rockwell Int'l Corp., 778 F.Supp. 512 (D.Colo.1991) (dismissing Bank Western and the Field Corporation's trespass claim).

3. In June, 1992, however, the magistrate judge ordered Rockwell to produce a bibliographic list of documents provided to the grand jury to give Plaintiffs the opportunity to request specific information.

4. The Church documents are materials collected in connection with a 1970's lawsuit alleging offsite contamination from Rocky Flats. See Good Fund, Ltd.—1972 v. Church, 540 F.Supp. 519

provide a specific statement of facts supporting each of the individual plaintiffs' claims, including the identification of each hazardous substance to which he or she was exposed, the amount of the exposure and any experts relied on to establish such exposure, plus an explanation of the basis for any medical monitoring, CERCLA, or property damage claims. Apart from these matters, no comprehensive scheduling order was entered at this time.

On August 17, 1992, Plaintiffs moved to compel Dow and Rockwell's compliance with the magistrate judge's June 30 order. They alleged that, while Defendants had provided computerized databases to the grand jury documents, they had not provided the *Church*, ChemRisk and Doty & Associates documents in computer-readable form. Dow and Rockwell opposed the motion.

On September 2, 1992, the magistrate judge held another scheduling conference. First, he granted Plaintiffs' motion to compel production of the *Church*, ChemRisk and Doty & Associates documents on disk, reasoning that "[t]o require the plaintiffs to sort manually when database disks are available, is not reasonable." He also entered the first true scheduling order in this case, establishing limits on the number of interrogatories and requests for production and a deadline for their completion, a schedule for depositions, deadlines for discovery of fact and expert witnesses and dates for settlement, status and pretrial conferences.

On September 23, 1992, Magistrate Judge Abram issued a second order concerning the factual basis for Plaintiffs' claims and Dow and Rockwell's production of computerized databases. This order was apparently in response to Dow and Rockwell's objections to Plaintiffs' Statement of Factual Basis, served on Dow and Rockwell on August 14 in compliance with the magistrate judge's June 30, 1992 order. In his September 23 order, the magistrate judge found the Plaintiffs' statement to be inadequate and directed them to answer seven specific questions with respect to the claims of each individual plaintiff by September 30, 1992. In addition, he ordered Plaintiffs to pay Dow and Rockwell $40,000 to reimburse them for half of their cost in optically screening documents provided to Plaintiffs on computer disk.

Plaintiffs objected and moved for reconsideration of the September 23 order, asking the court to withdraw the most recent questions or grant them additional time to answer. They argued that Dow and Rockwell had recently propounded voluminous discovery, they needed more time to respond to it and to digest materials provided through their own discovery, and their responses to Defendants' discovery would likely be responsive to the *court's* questions. On October 19, 1992, the magistrate judge granted reconsideration of his order in part, relieving Plaintiffs of the responsibility of answering interrogatories relating to their "Statement of Factual Basis" until the submission of their expert report.[5]

On November 6, 1992, Plaintiffs moved for an extension of November 13, 1992 deadline for providing their expert reports under Fed. R.Civ.P. 26(b)(4)(A)(i). Plaintiffs argued that their expert's preparation of a dose reconstruction analysis, by which they could calculate the individual plaintiff's exposure to hazardous substances, had been substantially delayed by Defendants' failure to provide the computerized form of critical documents and to identify the current custodian of other records. Dow and Rockwell opposed the motion, arguing that Plaintiffs were attempting to evade the requirement to disclose the factual basis for their claims.

(D.Colo.1982), *rev'd sub nom. McKay v. United States*, 703 F.2d 464 (10th Cir.1983). The ChemRisk documents are documents collected by ChemRisk, the contractor conducting a government-sponsored assessment of public health risks described in further detail below. The Doty & Associates documents are from a similar study conducted in 1991 to provide a listing of all spills, releases or other incidents involving hazardous substances at Rocky Flats. Defendants refer to these document sets as the "core documents" in this case.

**5.** In addition, on October 16, 1992, the magistrate judge granted Plaintiffs' motion for protective order, permitting them to respond to Rockwell's discovery requests by November 16, 1992 and to defer responding to Dow's discovery. Plaintiffs' motion was based on Defendants' duplicative discovery requests.

On November 23, 1992, Rockwell filed an objection to subpoenas directed to the DOE and EG & G requesting the production of documents provided to the grand jury in *United States v. Rockwell International Corporation.* Rockwell argued that the subpoenas violated Fed.R.Crim.P. 6(e). On November 24, 1992, the DOE also moved to quash the subpoenas, making some additional objections. First, the DOE contended that Plaintiffs' request for indices and databases to the Environmental Master File ("EMF") and related files produced at the facility was onerous and would result in the production of millions of pages of documents.[6] It likewise objected to the production of documents generated in the grand jury proceedings, claiming they were too voluminous, protected by Rule 6(e) and much of the material had already been produced. Finally, the DOE asserted that some of the documents were classified. EG & G filed a similar motion. Plaintiffs responded by moving to compel on December 8, 1992.

On December 30, 1992, Magistrate Judge Abram issued two orders disposing of these discovery motions. In the first order (the "Expert Discovery Order"), he denied Plaintiffs' motion to establish a revised expert discovery timetable, reasoning that "[t]he plaintiffs have had nearly two years to obtain their own soil, air and water tests as well as the determination of any lost market value of property," and that they had sufficient time to prepare their expert reports. (Expert Discovery Order at 1–2.)[7] In the second order (the "Document Discovery Order"), the magistrate judge granted the motions to quash Plaintiffs' subpoenas. He held that Plaintiffs were precluded from seeking grand jury documents through the "back door," and that they must be requested from Chief Judge Finesilver. He rejected Plaintiffs' requests for discovery of the EMF and related indices and databases, holding that Plaintiffs had not "established the necessity for such a voluminous request," since Plaintiffs had already received most of the information gathered by ChemRisk and Doty & Associates and used in their studies.

Finally, the magistrate judge ruled that Plaintiffs had several times failed to comply with his orders to define the factual basis of their claims. Under his view, the claims and issues of proof in the case were simple and did not require extensive factual discovery. He denied Plaintiffs further document discovery unless they could "establish that they have reviewed the documents produced and the various studies made available to them, ... the document requested has not been located, the specific reason for the need of the document, and the attempts by the party to locate the document through public reports or the reports provided to the plaintiffs." (Document Discovery Order at 4.) In addition, he ordered them to respond to his September 23, 1992 order by setting forth the specific facts and expert reports they would rely on to establish liability and damages.

On January 15, 1993, Plaintiffs filed objections to and an appeal from the Expert Discovery Order and the Document Discovery Order. Their appeal centers on two areas: (1) the continuation of discovery and preparation of expert reports and (2) discovery of the grand jury materials. Before entry of the December 30 orders, on December 10 and 11, 1992, Dow and Rockwell respectively moved to dismiss this action under Fed.R.Civ.P. 11 and 37. Defendants argued that Plaintiffs had consistently failed to comply with the magistrate judge's orders to identify a specific factual basis for their claims and their inability to do so mandated dismissal of the case.

II. *Plaintiffs' Appeal of Magistrate Judge Abram's December 30 Orders.*

▮ Review of the magistrate judge's December 30, 1992 orders is a deferential one. Magistrate judges are authorized under 28 U.S.C. § 636(b)(1)(A) to hear and determine any pretrial matter except for cer-

---

6. The EMF is the extensive, baseline file of environmental information collected at Rocky Flats over many years.

7. In addition, he granted Rockwell's November 16, 1992 motion to compel the production of all medical records for any plaintiff asserting a medical monitoring or emotional distress claim. This portion of the Expert Discovery Order is not contested.

tain dispositive motions listed therein. *See* 28 U.S.C. § 636(b)(1)(A). Review of a magistrate judge's ruling under this section is subject to the clearly erroneous or contrary to law standard. *Clark v. Poulton*, 963 F.2d 1361, 1363 (10th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992); *Smith v. Colorado Interstate Gas Co.*, 794 F.Supp. 1035, 1040 (D.Colo.1992). An order is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made. *See Hirschfeld v. New Mexico Corrections Dept.*, 916 F.2d 572, 580 (10th Cir. 1990); *Davidovich v. Welton (In re Davidovich)*, 901 F.2d 1533, 1536 (10th Cir.1990).

**A. Continuation of Discovery and Preparation of Expert Reports.**

Plaintiffs take issue with portions of both the Expert Discovery Order and the Document Discovery Order. First, they contend that the magistrate judge erred in limiting further discovery of documents relating to hazardous substances handled at Rocky Flats. Second, they argue that the magistrate erred in rejecting their request for an extension of time to prepare expert reports which would permit the completion of a dose reconstruction analysis. Plaintiffs' objections relating to the discovery of grand jury documents are discussed separately, below.

 In the Document Discovery order, the magistrate judge denied Plaintiffs' motions to compel, limiting their ability to require production of additional information on environmental conditions at Rocky Flats. He reasoned that Plaintiffs could rely on data in the public record and studies already made available to them to establish their exposure to hazardous substances. These include the ChemRisk study, commissioned by the Colorado Department of Health, and the Doty & Associates study provided to Plaintiffs in August, 1992. This puts Plaintiffs between a rock and hard place.

Reports available in the public sector document the routine mishandling of hazardous substances at Rocky Flats. (*See, e.g.*, Pl. Mem.Opp.Mot. Dismiss at 11 n. 15, 15 n. 16 & Ex. E.) These same public documents indicate, however, that a central problem at Rocky Flats has been the lack of adequate monitoring of the handling and disposal of hazardous substances. One report notes: "The Rocky Flats groundwater monitoring system had never met RCRA [Resource Conservation and Recovery Act] requirements, making it extremely difficult to track the extent, direction or movement of contaminants from the plant." (Pl.Mem.Opp.Mot. Dismiss, Ex. E at 74; *see also* Decl. Dr. Jan Beyea at 9.) In addition, the facility itself was closed in 1989 by the Environmental Protection Agency because of concerns over safety, and Rockwell has plead guilty to ten criminal violations under RCRA and the Clean Water Act. Thus, while information in the public sector supports Plaintiffs' contention that there have been releases which could detrimentally affect them, it also shows that data collection at the facility on actual releases cannot provide a solid basis for dose estimation.

Inadequate data on releases of contaminants from Rocky Flats led the Colorado Department of Health to commission the ChemRisk study, which is designed to estimate the amount of hazardous substances released from Rocky Flats and to determine the probable health effects from those releases. (*See* Dow Mot. Dismiss, Ex. B. at 1.) The ChemRisk study, however, is to date incomplete. Preliminary results of the first phase of the study, a toxicological review and dose reconstruction, are not due until September 1993. The second phase, a quantitative risk assessment, will not be completed for several years. (*See* Letter from CDH to Court of 2/8/93 at 1; Decl. Dr. Jan Beyea at 10 n. 7.)

Furthermore, it is not clear that documents culled by ChemRisk constitute all the data germane to Plaintiffs' claims. Although Dow and Rockwell argue that the core documents already provided are a complete collection of the relevant information available from Rocky Flats' files, Plaintiffs should be given a fair chance to determine whether there is additional information not considered in the ChemRisk or other studies which could impact dose estimation or their CERCLA claims, rather than being required to accept ipso facto the preliminary results of

the ChemRisk study. Examination of the EMF and related files, is therefore necessary. The magistrate judge placed limits on this discovery, however, requiring Plaintiffs to first show, among other things, that no document they were requesting had already been provided to them. Yet to make this showing Plaintiffs must, at minimum, be permitted to review the indices to these files so they can determine what information, in addition to the ChemRisk documents, is there and what has already been obtained.

■ Second, in the Expert Discovery Order, the magistrate judge denied Plaintiffs' motion for an extension of time to submit their expert reports, finding that they had more than two years to obtain their own soil, air and water tests, indicating his view that any expert report or dose reconstruction analysis could be based simply on measurements of existing levels of contaminants in the air, soil and bodies of the individual plaintiffs. This is rarely true. "Proof of pathway [to exposure], medical and economic causation in hazardous waste cases can be difficult to adduce. Usually, neither the chemicals in question nor their action in the environment can be directly observed." 3 · Susan M. Cooke, *The Law of Hazardous Waste* § 17.02[2][b] (1992).

Here, Plaintiffs' expert, Dr. Jan Beyea, states that current measurements are only one factor considered in determining Plaintiffs' exposure. Other factors include quantities of material consumed at Rocky Flats, epidemiological studies and monitored emissions. This data is used to model Plaintiffs' likely exposure to contaminants which can no longer be measured directly. (*See* Pl.Mem. Supp.Mot. Revised Expert Disc. Timetable, Decl. Dr. Jan Beyea at 7, 8; *see also* Dow's Reply Br.Supp.Mot. Dismiss, Ex. H at 1–2) ("Since past concentrations of radionuclides and chemicals in air, water, soil and food cannot be directly measured[,] available information must be used to estimate or 'reconstruct' doses received by off-site individuals.") In addition, measurements of other substances, such as plutonium, are not static, and "concentrations can change not only with respect to the distance and direction from the Rocky Flats Plant, but over time as

well." (Rockwell Reply Mem.Supp.Mot. Dismiss, Ex. G at 1; *see also* Decl. Dr. Jan Beyea at 3 n. 1, 5 n. 3.) Thus, to complete an accurate and realistic estimate of Plaintiffs' exposure to hazardous substances, their experts must review data on both consumption and emissions of hazardous materials at Rocky Flats—information within Defendants, DOE and EG & G's control. Soil, air and body testing is not enough.

■ Finally, the foregoing rulings by the magistrate judge are based on some misstatements of substantive law. First, Plaintiffs have asserted CERCLA claims in addition to their common law claims. Contrary to the magistrate judge's conclusion, (*see* Document Discovery Order at 3), Plaintiffs need not show *existing* contamination of their bodies or properties to establish their CERCLA claims. *Dedham Water Co. v. Cumberland Farms Dairy*, 889 F.2d 1146, 1152–54 (1st Cir.1989). Instead, CERCLA permits private parties to recover necessary costs in response to an actual or "threatened" release of a hazardous substance. *See* 42 U.S.C. § 9607(a)(4). Courts broadly construe the phrase "threatened release." *Amland Properties Corp. v. Aluminum Co. of Am.*, 711 F.Supp. 784, 792–93 (D.N.J.1989). For example, "[t]hreatened releases have been found to include: a defendant's mere ownership of 'corroding and deteriorating tanks,' a defendant's 'lack of expertise in handling hazardous waste,' or a defendant's 'failure to license the facility.'" *Dedham Water Co.*, 889 F.2d at 1152 (citations omitted). Even for an actual release, there is no quantitative requirement on the amount of the release, *see Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 669 (5th Cir.1989), nor any requirement that the plaintiff present evidence of off-site contamination. *See United States v. Mottolo*, 695 F.Supp. 615, 623 (D.N.H.1988).

■ In addition, the magistrate judge observed that Plaintiffs' common law claims for loss in the market value of their property "require a showing of *existing contamination* and a loss of market value." (Document Discovery Order at 3.) This is an unsettled issue of law. While some courts hold that common law claims for damages for loss in

property value due to the presence of hazardous substances requires proof of existing contamination, *see Adkins v. Thomas Solvent Co.*, 440 Mich. 293, 487 N.W.2d 715 (1992) (upholding summary judgment in nuisance action based on public's unfounded fear of contamination), others permit a claim based on loss in value based on a public perception that the property is contaminated. *See De-Sario v. Industrial Excess Landfill, Inc.*, 68 Ohio App.3d 117, 587 N.E.2d 454, 461 (1991) (public perception of contamination can support private nuisance claim); *Allen v. Uni-First Corp.*, 151 Vt. 229, 558 A.2d 961 (1988) (error in failing to instruct jury on damages based on evidence of public perception of widespread contamination).[8]

Reviewing the entire record, I am left with the definite and firm conviction that error occurred. Accordingly, I modify the portions of the magistrate judge's Document Discovery Order denying Plaintiffs' motions to compel and the Expert Discovery Order denying an extension for submission of expert reports. First, Plaintiffs shall be permitted additional discovery of environmental records generated at Rocky Flats without the limitations imposed in the Document Discovery Order. Nevertheless, I agree that the subpoenas served on the DOE and EG & G were overbroad in requesting the production of "all databases and indices" of the EMF and related files currently maintained by EG & G. After those subpoenas were served, however, Plaintiffs, the DOE and EG & G had apparently reached a tentative agreement narrowing many of the requests before further discovery was stayed by the magistrate judge's orders. (*See, e.g.,* Resp. EG & G Pls.' Appeal, Ex. A—Affid. Barbara Swenson.) The magistrate judge shall determine whether areas of dispute still remain, but the blanket limitations on all future document discovery are lifted. In addition, Plaintiffs will not be required to submit their expert reports until they have had a fair opportunity to identify, procure and digest any relevant

documents produced through this further discovery.

**B. Discovery of Grand Jury Materials.**

██ Plaintiffs also take issue with the magistrate judge's finding that the grand jury materials in *United States v. Rockwell International, Inc.* are not discoverable absent the consent of Chief Judge Finesilver. They dispute the magistrate judge's application of the Tenth Circuit's decision in *Anaya v. United States*, 815 F.2d 1373, 1379 (10th Cir.1987), to this dispute.

In *Anaya*, the court held that the focus of Fed.R.Crim.P. 6(e) is "whether the information requested will actually subvert the secrecy veiling what took place before the grand jury." *Id.* at 1378. In *Anaya*, the IRS obtained materials generated in an FBI investigation. Some of the materials were given to the grand jury, but those sought by the IRS were never presented to it and were kept physically separated. *See id.* at 1376. Because the grand jury never actually reviewed the materials sought in *Anaya*, the Tenth Circuit held that their production would not reveal matters occurring before it. *Id.* at 1379–80.

In contrast, Plaintiffs seek the production of "all indices and databases related to documents seized by the FBI and subpoenaed by the Grand Jury in relation to *United States v. Rockwell.*" (*See* App.Mem.Supp.Pls.' Mot.Compel., Subpoena Att. A at 6.) In essence, they seek to piggyback on the very same discovery the grand jury conducted. This is impermissible under *Anaya*.

"It is not the information itself, but the fact that the grand jury was considering that information which is protected by Rule 6(e)." *Anaya*, 815 F.2d at 1379. For this reason, the court in *Anaya* cited with approval the decisions in *Fund for Constitutional Government v. National Archives*, 656 F.2d 856 (D.C.Cir.1981) and *In re Sealed Case*, 801 F.2d 1379 (D.C.Cir.1986), where the movants sought disclosure of materials actually pre-

---

8. Defendants argue that the magistrate judge's conclusion is based on Judge Babcock's February 13, 1991 order. *See* 755 F.Supp. at 1483. The language they rely on was the judge's paraphrasing of the Plaintiffs' claims in connection with his ruling on Dow's statute of limitations

defense. Nor is the *Church* case dispositive. That case does not hold that damages can never be absent proof of actual contamination. In any event, the magistrate judges' ruling cannot be considered dispositive on this substantive issue.

sented to the grand jury. *See* 815 F.2d at 1379. While materials relevant to Plaintiffs' case may overlap with those subpoenaed in *United States v. Rockwell International Corporation,* Plaintiffs must obtain those documents because they are relevant to their claims in this case, not simply because they were provided to the grand jury in its criminal investigation of Rockwell. For this reason, I uphold the magistrate judge's denial of Plaintiffs' motion to compel the production of the grand jury materials.

### III. *Dow and Rockwell's Motions to Dismiss Under Rules 11 and 37.*

Moving to dismiss under Rules 11 and 37, Defendants argue that Plaintiffs' complaint was without factual basis when it was filed and Plaintiffs have failed to comply with the magistrate judge's scheduling order requiring them to identify the factual basis of their claims. Defendants focus specifically on Plaintiffs' alleged failure to demonstrate they were actually exposed to a hazardous substance. I deny these motions.

■ Rule 11 requires an attorney signing a pleading to have read the pleading, made a reasonable inquiry into its factual and legal basis, and not filed it for an improper purpose. *See* Fed.R.Civ.P. 11. In determining whether an attorney has made a reasonable factual inquiry, " '[t]he standard is one of reasonableness under the circumstances.' " *Business Guides, Inc. v. Chromatic Communications Enter., Inc.,* 498 U.S. 533, 551, 112 L.Ed.2d 1140, 111 S.Ct. 922, 933 (1991) (citation omitted). The adequacy of Plaintiffs' factual investigation is measured at the time of filing. *See* Fed.R.Civ.P. 11, advisory committee note ("The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading was submitted.") How much time the attorney had for investigation, whether the defendant permitted the plaintiff access to material information, the complexity of the factual issues, and the need for discovery to develop the factual circumstances supporting the claim are all factors which bear on this determination. *See* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1335 at 65 (1990).

■ Plaintiffs' second amended complaint was filed April 8, 1991. At that time, it was public knowledge that Rocky Flats had been closed after an FBI and EPA raid of the facility due to safety concerns about the handling of hazardous substances, and a grand jury had been empaneled to investigate environmental crimes at Rocky Flats after the raid. These reports were sufficient to provide a foundation for Plaintiffs' claims. *Cf. Kamerman v. Steinberg,* 113 F.R.D. 511, 514–15 (S.D.N.Y.1986) (news articles and public documents provide a reasonable factual basis for claims based on securities violations).

Furthermore, much of the information necessary to calculate accurately Plaintiffs' exposure to hazardous substances was classified and had been in Defendants' control or the control of third parties. Plaintiffs were denied any meaningful discovery until the summer of 1992, well over a year after the second amended complaint was filed. In these circumstances, Plaintiffs were justified in filing their complaint even if they could not identify the specific substances to which they were exposed. *See, e.g., Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d 90, 95 (3d Cir. 1988) (difficulty of proving claim and complexity of factual issues, especially where proof is in the defendant's control, mandates denial of Rule 11 sanctions); *Mohammed v. Union Carbide,* 606 F.Supp. 252, 253 (E.D.Mich.1985) (recognizing same principle).

■ Moreover, assuming that Plaintiffs' had a continuing duty under Rule 11 to review and reexamine the factual basis for their complaint, which they do not, *see* 5A Charles A. Wright & Arthur R. Miller, *supra,* § 1333 at 52–53 & n. 23 (citing cases), events since the filing of the complaint, if anything, favor Plaintiffs' case. The grand jury in *United States v. Rockwell International, Inc.* has found evidence of widespread environmental misconduct by Rockwell and the DOE.[9] Defendant Rockwell plead guilty

---

9. Rockwell deprecates this by pointing to the U.S. Attorney's report, which criticizes many of the grand jury's findings as unfounded. I must note, however, that the U.S. Attorney's office

to ten environmental crimes, and it is fair to infer that these crimes could have had public health consequences, particularly for those living near the facility. In addition, the CDH-commissioned ChemRisk study preliminarily identified a number of materials handled at Rocky Flats which mandate in-depth study of public health impact.

 Defendants nevertheless insist that the complaint was deficient because Plaintiffs have not plead with specificity the hazardous substances to which they or their properties were allegedly exposed. Defendants import a requirement into Rule 11 that does not exist. As the court explained in *Frantz v. United States Powerlifting Federation,*

> Rule 8 determines how much information has to be in the complaint—not much, as both the language of Rule 8 and the forms attached to the Rules show. The complaint should contain a "short and plain statement of the claim showing that the pleader is entitled to relief", Rule 8(a)(2). It is not only unnecessary but also undesirable to plead facts beyond limning the nature of the claim (with exceptions, see Rule 9, that do not concern us). Bloated, argumentative pleadings are a bane of modern practice. Rule 11 requires not that counsel *plead* facts but that counsel *know* facts after conducting a reasonable investigation—and then only enough to make it reasonable to press litigation to the point of seeking discovery. Rule 11 neither modifies the "notice pleading" approach of the federal rules nor requires

counsel to prove the case in advance of discovery.

836 F.2d 1063, 1067–68 (7th Cir.1987). For these reasons, I reject Defendants' contention that there is no Rule 11 basis for the complaint.

Defendants also argue that the case must be dismissed under Rule 37 for Plaintiffs' failure to obey the magistrate judge's order to supplement their statement of the factual basis of their claims. Rule 37 authorizes the court to take action against any party who fails to obey, among other things, a scheduling order. *See* Fed.R.Civ.P. 37(b)(2). Plaintiffs were required to file their initial statement before they had received most of the documents Defendants deemed relevant to this case, and the supplemental statement was due shortly thereafter. Despite being denied discovery for more than two years, Plaintiffs have provided the affidavit of their expert identifying substances to which they have been exposed based on the selective data already obtained.

 Defendants take issue, however, with the veracity of these assertions. For example, Rockwell suggests that the chemicals to which Plaintiffs allege they were exposed were present in "trivial amounts" and complains that Plaintiffs do not explain how their experts calculated concentrations of certain chemicals. Similarly, Dow argues that the CDH has consistently monitored emissions from Rocky Flats since a well-publicized fire in 1969 and that it has never found that the public is at risk from releases

likewise has not been immune to criticism. The chairman of the Senate subcommittee reviewing the Rocky Flats criminal investigation noted

> a troubling lack of public accountability in the Federal Government. Serious environmental crimes were committed, but no individuals were held responsible. The crimes were attributed to a "culture" at DOE—not the actions of responsible individuals. This is the white collar equivalent of blaming armed robbery on "society"—not the individual holding the gun.
>
> Second, it should be noted that the most important thing that Federal prosecutors bargained away in negotiations with Rockwell was the truth. By entering into this plea agreement, the prosecutors bargained away the

> right to fully and accurately inform the American people and the Congress about the conditions, activities, and crimes at the Rocky Flats facility. Conditions that, I might add, continue to this day even though Rockwell has been replaced as the facility's contractor.

(Pls.' Mem.Opp.Defs.' Mot. Dismiss, Ex. E at 4) (letter from Chairman of Investigations Subcommittee to Chairman of Committee on Science, Space & Technology forwarding report on Rocky Flats investigation). Furthermore, this same report noted that there was evidence of criminal conduct at Rocky Flats which had the potential for offsite consequences, but that "[a]ll of those charges were dropped or revised into permit or storage violations because of Rockwell's fear that they would increase the potential of civil litigation and liability for the company." (*Id.* at 66.)

from the facility.[10] Defendants' disputes with Plaintiffs' factual contentions can be resolved at trial; they are not the proper basis for a dismissal under Rule 11 or 37. *See Mary Ann Pensiero, Inc.*, 847 F.2d at 95 ("A requirement that counsel, before filing a complaint, secure the type of proof necessary to withstand a motion for summary judgment would set a pre-filing standard beyond that contemplated by Rule 11).

In sum, while there is need to strike a balance between giving Plaintiffs a fair chance at discovery and protecting Defendants from a lawsuit which may have no factual basis, if Plaintiffs' case is as meritless as Defendants suggest, Defendants can easily prevail on summary judgment. Any costs of discovery can then be apportioned fairly. The discovery rules were promulgated so that "civil trials in the federal courts no longer need be carried on in the dark." *Hickman v. Taylor*, 329 U.S. 495, 500, 67 S.Ct. 385, 388, 91 L.Ed. 451 (1947).[11] Plaintiffs have demonstrated a Rule 11 basis for their case; they should be permitted "a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682–83, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958). I deny the motions to dismiss.

## IV. *Additional Orders.*

This case is remanded to Magistrate Judge Borchers with directions to convene the parties and enter a new case management order consistent with the views expressed in this memorandum opinion. The order should note that the magistrate judge will determine any further discovery disputes and appeals of discovery orders, if any, will be handled by me on an expedited basis. The order should reflect my earlier ruling that Plaintiffs' class certification motion shall be filed on or before April 25, 1993, Defendants' response to the motion shall be filed on or before May 25, 1993 and Plaintiffs' reply, if any, shall be filed on or before June 25, 1993. Finally, the order should include prompt dates, immediate resumption of document discovery, the provision of expert reports and a date for a status conference before me in not more than eight months. Accordingly,

IT IS ORDERED THAT Plaintiffs' motion for the scheduling of further proceedings is GRANTED as specified herein; and

IT IS FURTHER ORDERED THAT Plaintiffs and Defendants' earlier motions for the entry of a pretrial or case management order are DENIED as moot; and

IT IS FURTHER ORDERED THAT Plaintiffs' objections to and appeal from the magistrate judge's December 30, 1992 orders are GRANTED IN PART and DENIED IN PART as provided herein; and

IT IS FURTHER ORDERED THAT Defendants' motions to dismiss under Rules 11 and 37 are DENIED.

---

**10.** I note that this contention is facially inconsistent with the CDH's decision to commission the ChemRisk study, which is specifically targeted at determining the amount and danger from hazardous materials likely released from Rocky Flats.

**11.** I remain a critic of the Federal Rules of Procedure believing them to be outdated and dysfunctional. Nevertheless, judicial discipline requires that I apply the law as I think it is and not as I think it ought to be.