The **ESTATE of Arthur M. BARRETT by Elaine BARRETT, in her capacity as Administratrix of the Estate of Arthur M. Barrett, Plaintiff,**

v.

**THE UNITED STATES of America, et al., Defendants.**

No. CIV.A.03–10601–RCL.

United States District Court, D. Massachusetts.

Sept. 29, 2004.

Stacey Bosshardt, U.S. Department of Justice, Torts Branch, Civil Division, Washington, DC, for United States of America, Defendant.

William A. Brown, Boston, MA, for Robert Fitzpatrick, Defendant.

Earle C. Cooley, Cooley Manion Jones LLP, Boston, MA, Kevin M. Glynn, Cooley Manion Jones LLP, Boston, MA, for Elaine Barrett, Plaintiff.

Brian P Fitzsimmons, Hanley, Hassett & Fitzsimmons, LLC, Milton, MA, for James Ahern, Defendant.

Douglas I. Louison, Stephen C. Pfaff, Merrick, Louison & Costello, Boston, MA, for Roderick Kennedy, Defendant.

Peter E. Mullane, Mullane, Michel & McInnes, Cambridge, for John J. Connolly, Jr., Defendant.

E. Peter Parker, Boston, for H. Paul Rico, Defendant.

Christine M. Roach, Roach & Carpenter, P.C., Boston, for James Greenleaf, Defendant.

Alan D. Rose, Jr., Rose & Associates, Boston, for James Ring, Defendant.

*MEMORANDUM AND ORDER ON MOTIONS OF THE UNITED STATES, FITZPATRICK, AND MORRIS TO DISMISS BASED ON THE STATUTE OF LIMITATIONS*

LINDSAY, District Judge.

## I. INTRODUCTION

This is an action brought by Elaine Barrett (the "plaintiff") as the administratrix of the Estate of Arthur M. Barrett (the "Estate") against the United States of America, Robert Fitzpatrick and John Morris, (the "agents," both of whom were FBI agents at the times relevant to the complaint), and others. The case arises out of the circumstances surrounding the murder of Arthur M. Barrett ("Barrett"), who was killed sometime after he disappeared on or about July 26, 1983. The plaintiff has alleged that crime lords James J. Bulger and Stephen J. Flemmi and their associates murdered Barrett. The plaintiff also alleges that, at the time of Barrett's murder, Bulger and Flemmi were "top echelon" informants for the Federal Bureau of Investigation (the "FBI") and leaders of the Boston area's Winter Hill Gang, an association of individuals engaged in criminal activities. The complaint alleges that the United States, Fitzpatrick, Morris, and others allegedly permitted Flemmi and Bulger to commit criminal activities with impunity, including the murder of Barrett.

The complaint is in twelve counts.[1] In counts I through IV, the plaintiff asserts wrongful death claims by the Estate against the United States, Fitzpatrick, and Morris. Count VI contains an additional claim against the United States for wrongful death. The claims against the United States purport to have been brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2401, 2671, *et seq.* The United States has moved to dismiss all of the claims against it for lack of subject matter jurisdiction, claiming that the plaintiff failed to present her administrative claim to the appropriate federal agency within two years of the accrual of that claim, as required by the FTCA, 28 U.S.C. § 2401(b). The plaintiff presented her administrative complaint on behalf of the Estate on January 14, 2003.

In counts IX, X, XII, and XIII, the plaintiff also maintains that the conduct of Fitzpatrick and Morris is actionable under the rule stated in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), because the conduct violated Barrett's rights under the Fourth and Fifth amendments to the Constitution of the United States and the Estate's right to access to courts guaranteed by the First and Fifth amendments. The plaintiff's *Bivens* and wrongful death claims against Fitzpatrick and Morris are subject to three-year statutes of limitations.[2] The

---

1. The complaint does not contain a claim captioned as "Count V" but does contain two counts captioned as "Count XIII." Because the second "Count XIII" is a request for attorneys' fees, I consider it a request for relief rather than a cause of action.

2. Because Congress has not established a time limitation for *Bivens* actions, the three-year Massachusetts statute of limitations applicable in tort actions for personal injuries, Mass. Gen. Laws ch. 260, § 2A, or civil rights actions, Mass. Gen. Laws ch. 260, § 5B, and any associated state tolling laws will apply, provided they are not inconsistent with feder-

al law or policy. *Wilson v. Garcia*, 471 U.S. 261, 266–67, 276–80, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Because both statutes have a three-year period of limitations, it is unnecessary to decide whether Mass. Gen. Laws ch. 260, § 5B supplants Mass. Gen. Laws ch. 260, § 2A for purposes of federal civil rights actions. *Street v. Vose*, 936 F.2d 38, 39 n. 2 (1st Cir.1991).

Under Massachusetts law, an action for wrongful death "shall be commenced within three years from the date of death, or within three years from the date when the deceased's executor or administrator knew, or in the

plaintiff filed her lawsuit on April 2, 2003. Fitzpatrick and Morris moved to dismiss the claims against them as time-barred (docket entries 24 and 12).[3] In their respective motions, Fitzpatrick and Morris adopt the argument of the United States has made in support of its motion to dismiss.

For the reasons stated below, I hold that the plaintiff presented her administrative claim more than two years after its accrual, and therefore I GRANT the motion to dismiss of the United States. I also hold that the plaintiff filed this lawsuit more than three years after her state law and *Bivens* claims against Fitzpatrick and Morris accrued, and therefore I GRANT their motions to dismiss.

## II. FACTUAL BACKGROUND

In considering the United States' motion to dismiss for lack of subject matter jurisdiction, I "accept[ ] the plaintiff's version of jurisdictionally-significant facts as true" and "assess whether the plaintiff has propounded an adequate basis for subject matter jurisdiction." *Valentín v. Hospital Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001).[4] In considering the motions to dismiss of Fitzpatrick and Morris, I must "accept the plaintiff's well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff." *United States ex rel. Karvelas v. Melrose–Wakefield Hosp.*,

360 F.3d 220, 224 (1st Cir.2004). I nonetheless "reject claims that are made in the complaint if they are 'bald assertions' or 'unsupportable conclusions.'" *Id.* In analyzing the motions, I may consider certain extrinsic materials without engaging in jurisdictional factfinding or converting the motion to dismiss into one for summary judgment. *See Valentín*, 254 F.3d at 363; *Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34, 37 (1st Cir.2000); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir.1993) (explaining that " documents the authenticity of which are not disputed by the parties," " official public records," "documents central to [the] plaintiffs' claim," or "documents sufficiently referred to in the complaint" may be considered in ruling on a motion under Fed.R.Civ.P. 12(b)(6)).

For purposes of this memorandum, I will assume the reader's familiarity with the numerous allegations contained in the plaintiff's lengthy complaint. Most of the plaintiff's allegations were drawn from the findings of fact in *United States v. Salemme*, 91 F.Supp.2d 141 (D.Mass.1999) (Wolf, J.), *rev'd in part on other grounds by United States v. Flemmi*, 225 F.3d 78 (1st Cir.2000). *See* Compl. ¶ 6 ("This complaint closely tracks the findings and rulings of the United States District Court for the District of Massachusetts [contained in *Salemme* ].") The complaint also appears to have been created by a manual

---

exercise of reasonable diligence, should have known of the factual basis for a cause of action." M.G.L. ch. 229 § 2.

3. Morris and Fitzpatrick captioned their motions as motions to dismiss for lack of subject matter jurisdiction. Because subject matter jurisdiction is not at issue with respect to the plaintiff's common law or *Bivens* claims against Morris and Fitzpatrick, I will treat their motions as having been brought pursuant to F.R.C.P. 12(b)(6).

4. The First Circuit's shorthand for the method of considering a motion to dismiss for lack of

subject matter jurisdiction without challenging the truthfulness *vel non* of plaintiff's allegations is the "sufficiency challenge." *Valentín*, 254 F.3d at 363. I could also determine whether the plaintiff's allegations supporting subject matter jurisdiction can withstand a "factual challenge." *Id.* Under this approach, "the plaintiff's jurisdictional averments are entitled to no presumptive weight," and "the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties." *Id.* In this case, however, I do not need to engage in differential factfinding because the government has treated the plaintiff's factual allegations as true.

cutting and pasting of the complaint in *McIntyre v. United States, et al,* Civil Action No. 01–10408–RCL. In determining whether the plaintiff's FTCA claims accrued more than two years before she presented her administrative claim, I have considered the numerous media reports the government submitted in conjunction with this motion, focusing in particular on an article published on March 9, 2000, in which the plaintiff was quoted as having said, in reference to Barrett's death that, "the government is responsible." U.S. Mem. Supp. Mot. Dismiss Ex. 1 (Shelley Murphy, *Burglar Caught in Violent Web Victim Made Last Desperate Calls for Money,* BOSTON GLOBE, Mar. 9, 2000, at B1 (the "Murphy article"), *available at* 2000 WL 3317093).[5] The plaintiff has not contested the authenticity of these documents or the attribution of the preceding statement to her. I have relied on the same documents in analyzing whether the plaintiff's *Bivens* and wrongful death claims against Fitzpatrick and Morris accrued more than three years before she filed this lawsuit.

According to the plaintiffs, Barrett disappeared on July 26, 1983 and was subsequently tortured and murdered by Bulger, Flemmi, and others. "For more than 16 years after Barrett's disappearance … his family was ignored by the FBI, except for a brief early visit following his disappearance, when the FBI claimed that Barrett was alive and a fugitive." Compl. ¶ 5. "On September 15, 1999, [the *Salemme* decision] disclosed, for the first time, information bearing on the complicity of the FBI in enabling and covering up the murders of Barrett and others." Compl. ¶ 5. "Four months following the issuance of [*Salemme* ], Barrett's bones were uncovered ….." Compl. ¶ 5. On March 9, 2000, the Murphy article reported that Barrett's remains had been identified the previous day. Murphy, *supra.*[6] The article also reported that Kevin Weeks, a former associate of Bulger, cooperating with the police, had led the police to Barrett's remains and had implicated Bulger and Flemmi in the murder of Barrett. *Id.* After explaining that Bulger and Flemmi had been FBI informants, the Murphy article quoted the plaintiff as stating, "I think the government is responsible because if they put [Bulger and Flemmi] away when they should have, [Barrett] would be alive today…. They gave them a license to kill and do whatever they wanted." *Id.* Murphy also reported that the plaintiff "said she feels some closure in knowing what happened to her husband." *Id.* The same article also quoted Kevin Glynn and identified him as an attorney representing the Barrett family. *Id.* Glynn later signed the Estate's administrative claim as well as the complaint in this lawsuit.

## III. DISCUSSION

### A. Motion of the United States

 "The general rule, within the meaning of the FTCA, is that a tort claim accrues at the time of the plaintiff's injury." *Skwira v. United States,* 344 F.3d 64, 73 (1st Cir.2003) (quoting *Attallah v. United States,* 955 F.2d 776, 779 (1st Cir.1992)),

---

**5.** Shelly Murphy authored other articles concerning Barrett. *See, e.g.,* U.S. Mem. Supp. Mot. Dismiss Ex. 5. In this memorandum, however, the term "Murphy article" or the shortened citation "Murphy, *supra* " will refer to this March 9, 2000 article.

**6.** The plaintiff has alleged that "post-mortem determinations *and procedures* sufficient to identify *and permit release of Barrett's remains for cremation* were not completed until April, 2000." Compl. ¶ 5 (emphasis added). Because this allegation refers to the timing of both the identification *and release* of Barrett's remains, it does not contradict the statement in the Murphy article that Barrett's remains were identified on March 8, 2000.

*cert. denied,* —— U.S. ——, 124 S.Ct. 2836, 159 L.Ed.2d 267 (2004). Under the so-called discovery rule, however, "the test [of accrual] is whether plaintiff knows, or in the exercise of reasonable diligence should have known, the factual basis of the cause of action, including the fact of the injury and the injury's causal connection to the government." *Cascone v. United States,* 370 F.3d 95, 104 (1st Cir.2004). The standard of accrual under the discovery rule is an objective one, *Cascone,* 370 F.3d at 104, and the "reasonable diligence component" of the rule prevents a plaintiff from preserving her claim by "bury[ing] her head in the sand," *Skwira,* 344 F.3d at 77 (quoting *Diaz v. United States,* 165 F.3d 1337, 1339 (11th Cir.1999)). Moreover, the "knowledge" necessary to trigger accrual need not be conclusive or absolute; rather, it consists of "the discovery of sufficient facts about the injury and its cause to prompt a reasonable person to inquire and seek advice preliminary to deciding if there is a basis for filing an administrative claim against the government." *Id.*

Under the FTCA, once a plaintiff's claim against the United States accrues, she has two years to present her administrative claim to the relevant agency of the United States. 28 U.S.C. § 2401(b) A plaintiff presents an administrative claim by completing a two-page form, and "the burden of preparing this form is minimal." *Skwira,* 344 F.3d at 70. Contrary to an argument advanced by the plaintiff, the certification requirements of Fed.R.Civ.P. 11(b) apply only to practice in the federal district courts and are irrelevant to the presentment of an administrative claim. *See* Fed.R.Civ.P. 1, 11; *Gualtier v. United States,* 837 F.Supp. 360, 365–66 (D.Kan. 1993).

█ In this case, the plaintiff unquestionably had notice of the factual basis of her claim more than two years before she presented that claim on January 14, 2003.

For purposes of this motion, the plaintiff's case is indistinguishable from a related case included in the consolidated appeal *McIntyre v. United States,* 367 F.3d 38 (1st Cir.2004). In *McIntyre,* the theory of liability of the Wheeler plaintiffs was essentially identical to the one advanced by the plaintiff—that the United States was liable for the death of Roger Wheeler because the FBI allowed Bulger and Flemmi to commit crimes with impunity, including the murder of Wheeler. In proceedings leading to the appeal before the First Circuit, I granted a motion by the United States to dismiss the Wheeler complaint for lack of subject matter jurisdiction, based on the statute of limitations. The First Circuit affirmed the dismissal. In so doing, the court explained that the knowledge required to trigger accrual of the FTCA claims of the Wheeler plaintiffs consisted of

> facts available that would permit a reasonable person to conclude (1) that Bulger and Flemmi were instrumental in the murder of Roger Wheeler; (2) that Bulger and Flemmi were informants for the FBI; and (3) that the FBI had a special relationship with Bulger and Flemmi that protected and encouraged them in their criminal activity, including Wheeler's murder.

*Id.* at 58. Pointing to the substantial news coverage of the relationship between the FBI and Bulger and Flemmi, including information found in reports quoting a representative of Roger Wheeler's estate concerning that relationship, the First Circuit concluded that the Wheeler plaintiffs had or should have discovered all three of the triggering facts more than two years prior to filing of the administrative claim. *Id.* at 58–61.

Like the Wheeler plaintiffs, the plaintiff in this case knew more than two years prior to the filing of her administrative claim that "Bulger and Flemmi were in-

strumental in the murder of [Barrett]," that "Bulger and Flemmi were informants for the FBI," and that "the FBI ... protected and encouraged [Bulger and Flemmi] in their criminal activity, including [Barrett]'s murder." *Id.* at 58. The plaintiff alleges that the 1999 *Salemme* decision "disclosed, for the first time, information bearing on the complicity of the FBI in enabling and covering up the murders of Barrett and others," Compl. ¶ 5, but she has not alleged any delay in learning of the contents of the opinion. Moreover, on March 9, 2000, the Murphy article quoted the plaintiff as stating that the government was responsible for Barrett's murder, because the FBI had given Bulger and Flemmi a "license to kill." Murphy, *supra.* The plaintiff has not challenged the attribution of that statement to her. Thus, by that statement, the plaintiff has admitted that, not later than March 8, 2000, she had actual knowledge of the involvement of Bulger and Flemmi in Barrett's murder, the fact that Bulger and Flemmi were FBI informants at the time of Barrett's murder, and the fact that the FBI encouraged and protected Bulger and Flemmi in the murder of Barrett.[7] In short, her statement indicates that by March 8, 2000, she knew that the government was responsible for the murder of her husband. The plaintiff's claims accrued no later than that date. Because the plaintiff did not comply with the two-year presentment requirement of the FTCA, I am without jurisdiction over her claims and GRANT the motion of the United States.

## B. Motions of Fitzpatrick and Morris

■ The test of accrual of the *Bivens* and wrongful death claims against Fitzpatrick and Morris is essentially the same as the test of accrual of the plaintiff's claims under the FTCA. *See Marrapese v. Rhode Island,* 749 F.2d 934, 938 n. 8 (1st Cir.1984); M.G.L. ch. 229 § 2. The plaintiff has not argued that there is any difference between the factual basis of her claims under the FTCA and the factual bases of her *Bivens* and wrongful death claims; nor do I find such a distinction. Thus, for the reasons stated above, I find that the plaintiff's *Bivens* and wrongful death claims accrued not later than March 8, 2000— more than three years prior to the April 2, 2003 filing of this lawsuit.

■ The plaintiff argues that the certification requirements of Rule 11(b) either delayed accrual of her claim or served as an obstacle to the filing of her lawsuit within the three-year period of limitations following the accrual of her claim. This proposition is wholly without merit. Indeed, it strains the straight-face test.[8]

---

7. Because March 8, 2000 is more than two years prior to the date the plaintiff presented her administrative claim and more than three years before the date she filed her lawsuit, I do not need to decide the earliest date at which her claims could have accrued. Nonetheless, by referring to March 8, 2000 as a date by which the plaintiff knew of the factual basis her claim, I do not exclude the possibility that she acquired or should have acquired that knowledge well before March 2000.

8. A more appropriate concern for the requirements of Rule 11 would have counseled caution in the filing of a complaint that was so clearly time-barred as the one here. *See Brubaker v. City of Richmond,* 943 F.2d 1363, 1385 (4th Cir.1991) ("Where an attorney knows that a claim is time-barred and has no intention of seeking reversal of existing precedent ... he makes a claim groundless in law and is subject to Rule 11 sanctions."); *McHenry v. Utah Valley Hosp.,* 724 F.Supp. 835, 838 (D.Utah 1989) (concluding that "a reasonable inquiry into the law would have shown that [the plaintiff]'s claim was time-barred and the statute of limitations is constitutionally sound," and awarding Rule 11 sanctions); *Murphy v. Klein Tools, Inc.,* 123 F.R.D. 643, 646–47 (D.Kan.1988) (citing circuit and district court cases where courts found "sanctionable conduct under Rule 11 for bringing claims clearly time-barred under the respective statutes of limitations.").

When an attorney signs a complaint (or other pleading) in a federal district court, he or she certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, ... (3) the allegations and other factual contentions have evidentiary support or ... are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." *Id.* Fed.R.Civ.P. 11(b). While the reasonable inquiry requirement is not to be taken lightly, Rule 11 does "allow pleadings based on evidence reasonably anticipated after further discovery or investigation." *Rotella v. Wood,* 528 U.S. 549, 560, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000) (holding that plaintiff's RICO claim was barred by the statute of limitations). Whether an inquiry is "reasonable under the circumstances" takes into account the lack of access to information within the defendant's exclusive control. *See Robinson v. Dean Witter Reynolds, Inc.,* 129 F.R.D. 15, 22 (D.Mass.1989) ("If the lawyer has only limited ... access to information prior to filing, it is reasonable for her to conduct a less extensive inquiry ...." (quoting Note, *Plausible Pleadings: Developing Standards for Rule 11 Sanctions,* 100 Harv. L.Rev. 630, 642–43 (1987))). Moreover, an attorney's reliance on public reports of circumstances alleged in a complaint may be a reasonable inquiry for purposes of Rule 11(b). *Cook v. Rockwell Int'l Corp.,* 147 F.R.D. 237, 246 (D.Colo. 1993).[9]

Here, there was an abundance of information available prior to March 8, 2003 that the plaintiff's attorneys could have used to conduct an inquiry comporting with the requirements of Rule 11(b). Most notably, the detailed findings in *Salemme*—— based on sworn testimony taken in hearings that spanned a year and produced 17,000 pages of transcripts, 141 F.2d at 163—— provided an ample factual basis for performing such an inquiry years before the plaintiff filed her complaint. Moreover, the fact that the attorneys for the plaintiff relied on *Salemme* in drafting the complaint filed on April 2, 2003 is proof positive that the opportunity for a reasonable inquiry was available within the period of limitations.

## IV. CONCLUSION

For the reasons stated above, the motions of the United States, Fitzpatrick, and Morris to dismiss are GRANTED.

SO ORDERED.

---

**9.** *See also Forbes v. Eagleson,* 19 F.Supp.2d 352, 375–76 (E.D.Pa.1998) (holding that the plaintiffs' RICO claims were time-barred, and explaining that reliance on a report written by a lawyer and based on extensive investigations would have satisfied Rule 11(b); also explaining that "[p]laintiffs would have acted consistent with Rule 11" if, after having read news articles describing "self-enriching" schemes between RICO defendants, the plaintiff had "simply contacted sources cited by [the media reports]"); *Greenfield v. U.S. Healthcare, Inc.,* 146 F.R.D. 118, 125 (E.D.Pa. 1993) (attorney who had relied on articles in respected newspaper and industry publications, publicly available documents, and securities law in filing class action securities litigation complied with Rule 11(b)); *In re Air Disaster at Lockerbie, Scotland,* 144 F.R.D. 618, 621 (E.D.N.Y.1992) ("[P]arties and their attorneys may base their complaints and requests for discovery on ... hearsay reports and statements of others until such time, if ever, as they are satisfied that the statements ... are not competent or are otherwise untrustworthy."); *Kamerman v. Steinberg,* 113 F.R.D. 511, 514–15 (S.D.N.Y.1986) (news articles and public documents provide a reasonable factual basis for claims based on securities violations).