Toney ANAYA and Elaine Anaya,
Petitioners-Appellants,

v.

UNITED STATES of America,
Respondent-Appellee.

No. 86–2158.

United States Court of Appeals,
Tenth Circuit.

April 10, 1987.

David F. Cunningham (M. Karen Kilgore, with him on the briefs) of White, Koch, Kelly & McCarthy, P.A., Santa Fe, N.M., for petitioners-appellants.

Alan Hechtkopf, Attorney (Roger M. Olsen, Asst. Atty. Gen., Michael L. Paup and Charles E. Brookhart, Attorneys, and William L. Lutz, U.S. Atty., of counsel, with him on the brief), Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee.

Before MOORE, ANDERSON and BALDOCK, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

This is an appeal from an order of the district court enforcing certain administrative summons issued by the Internal Revenue Service (IRS or Service). The appellant taxpayers contend that enforcement should not have been granted for various reasons, but principally because the IRS had improperly received "grand jury information" about a pending investigation of one of them. After examination of the record, the briefs, and the oral argument, we conclude that disclosures made to the IRS were not protected by Fed.R.Crim.P. 6(e), that the trial court properly ordered enforcement, and no reason exists for disturbing that order.

**I.**

What started as a commonplace proceeding for an order quashing third party IRS summons pursuant to 26 U.S.C. § 7609(b)(2) was quickly escalated by the taxpayers and cast into an inquiry under Fed.R.Crim.P. 6(e) to determine whether the government was guilty of a violation of grand jury secrecy. Indeed, from the virtual inception of the case, the taxpayers put the trial court in the position of dealing with this matter as a criminal case which required *in camera* treatment.[1] There-

after, because of the posture in which the case had been cast, this matter soon became confusingly unwieldy.[2]

It is therefore necessary to emphasize that the district court's jurisdiction was invoked in a civil proceeding under 26 U.S.C. § 7609(h)(1) to determine whether to quash or enforce the summons in issue. Indeed, in oral argument counsel for the taxpayers conceded that such is the case. Thus, our consideration of the issues is guided only by the principles that apply to the civil proceeding provided in § 7609(h)(1).

**II.**

The taxpayer, Toney Anaya,[3] then Governor of the State of New Mexico, had been implicated in separate and contemporaneous investigations conducted by the Federal Bureau of Investigation (FBI) and the IRS. The investigation conducted by the FBI had focused on Mr. Anaya more than the investigation conducted by the IRS, but both had been in progress for some time prior to the events leading to this case. During the course of the investigation conducted by the FBI, matters pertinent to Mr. Anaya were brought to the attention of a grand jury convened in the District of New Mexico. Subsequently, agents of the FBI decided to confer with agents of the IRS to disclose information about Mr. Anaya's income learned in the course of the former's investigation. At a meeting called for that purpose, agents of the FBI disclosed to agents of the IRS in general terms that Mr. Anaya had possibly received income from "payoffs" made in connection with the award of contracts by the State of New Mexico, and that such income probably was not reported on Mr. Anaya's personal income tax returns.

---

**1.** We are not critical of the trial court's decision. In the way the issues were presented to the court, prudence and caution dictated this response.

**2.** Indeed, there were many procedural sidesteps taken in this case, including forays into this court, which we have chosen not to relate here

because the telling does not aid explication of the issues.

**3.** Mrs. Anaya is a party to these proceedings, but she appears here only because she and her husband filed joint returns.

On the following day, the IRS Group Manager met with the United States Attorney and agents of the FBI to discuss whether the IRS would join in the pending grand jury investigation. At the conclusion of this meeting, each side independently decided that the IRS would continue on its separate course. Nevertheless, the IRS agents proceeded to intensify their own investigation and focused their attention more closely upon Mr. Anaya.

As part of this effort, an IRS agent went to the local FBI office and examined FBI files developed during its investigation of Mr. Anaya. These files contained memoranda of interviews and summaries of investigations made by FBI agents. None of the substantive documents contained in that file were presented to the grand jury.[4] Indeed, in accordance with regular FBI policy, all grand jury evidence was kept segregated in a locked safe physically separated from the files examined by the IRS agent.

A subsequent meeting was held between the U.S. Attorney and agents of the IRS. At that meeting the U.S. Attorney advised the IRS agents of four additional allegations that Mr. Anaya had received payoffs. He also told them of certain real estate transactions involving Mr. Anaya about which he had suspicion because they appeared to be beyond Mr. Anaya's financial means. The subject of the real estate transactions had not been presented to the grand jury, and facts pertinent to one of the alleged payoffs had arisen in evidence at a prior trial. Although the subject of the remaining allegations had been presented to the grand jury, the information conveyed by the prosecutor came from independent sources.[5] Additionally, the U.S. Attorney did not tell the IRS that the grand jury had considered these matters.

The information given to the IRS by the United States Attorney was very general in nature. The prosecutor simply stated that allegations had been made by other persons accusing Mr. Anaya of receiving money for performance of certain acts. No details of these transactions were disclosed by the prosecutor.

After evidentiary hearings that lasted over eighteen hours, during which the trial court patiently allowed counsel for the taxpayers to conduct a painstaking interrogation of the U.S. Attorney and government agents, the trial court concluded the investigation conducted by the IRS was "independent"; that the summons were issued "for a proper purpose"; that the items sought by the IRS were not in the possession of the IRS; that the taxpayers had been notified; that there had been "no referral to the Department of Justice"; and that there was no evidence of "institutional bad faith on the part of IRS." The court further concluded that:

> [The] IRS has acted circumspectly in obtaining the information that it did from the FBI. It informed the FBI, informed [the United States Attorney] that it did not want nor would it consider 6(e) material. And these folks understand what 6(e) material is, and with that preface the files of the FBI, the five files were turned over to IRS and it was a clean deal, in my opinion, and I'm going to so find.

---

**4.** The file did contain a cover letter for two grand jury subpoenas and a "green sheet" describing a bulky document. As we shall later discuss, the cover letter and the green sheet were found by the trial court to be material subject to Fed.R.Crim.P. 6(e) even though it was not clear whether the exhibit described in the green sheet was ever submitted to the grand jury. The court's conclusion that these documents were protected by Rule 6(e) was made in the exercise of abundant caution, however. The court stated doubt that such was the case, but in any event the court concluded the viewing of these two documents "would not vitiate the investigation by IRS such that the summons-

es should be quashed." We note nothing in the record indicating matters of substance were contained in these documents; therefore, the trial court's conclusion is apt. Notwithstanding these circumstances, the taxpayers argue that because the trial court held these documents were governed by Rule 6(e) without objection by the government, the latter now "concedes" 6(e) material was given to the IRS. The argument overstates the circumstances.

**5.** News accounts of the grand jury's investigation into one of the payoff charges had been made public prior to the disclosure to the IRS.

With those conclusions, the trial court denied relief to the taxpayers, and they appealed.

## III.

To obtain enforcement of an IRS administrative summons, the government must first show that the IRS has not made a referral of the taxpayer's case to the Justice Department for criminal prosecution. *United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). The government then must show that the IRS is proceeding in good faith by demonstrating: (1) that the investigation will be conducted pursuant to a legitimate purpose; (2) that the inquiry will be relevant to that purpose; (3) that the information sought is not already in the possession of the IRS; and (4) that the summons was issued in compliance with the administrative steps required by the Internal Revenue Code. *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964); *United States v. Balanced Financial Management, Inc.,* 769 F.2d 1440 (10th Cir.1985).[6] Once the government has met this burden (which is "slight," *Balanced Financial Management,* 769 F.2d at 1443), the onus of going forward shifts to the taxpayer to show enforcement of the summons would "constitute an abuse of the court's process," *United States v. Genser,* 582 F.2d 292, 302 (3d Cir.), *cert. denied,* 444 U.S. 928, 100 S.Ct. 269, 62 L.Ed.2d 185 (1979), or that in issuing the summons the IRS lacks "institutional good faith." *United States v. Moll,* 602 F.2d 134, 138 (7th Cir.1979); *Balanced Financial Management,* 769 F.2d at 1444.

Institutional good faith on the part of the Internal Revenue Service is essential to insure honest pursuit of the goals of 26 U.S.C. § 7602 in the issuance of the summons. *LaSalle,* 437 U.S. at 313, 98 S.Ct. at 2365. In *LaSalle,* the IRS agent began his investigation of the taxpayer with information he received from the FBI, the local United States Attorney, and other federal agencies. To aid in this investigation, he issued two administrative summons which were subsequently made the subject of an enforcement hearing in the district court. The district court refused enforcement of the summons upon a finding that they were issued "solely for the purpose of unearthing evidence of criminal conduct" by the taxpayer. *LaSalle,* 437 U.S. at 304, 98 S.Ct. at 2361. That order was affirmed by the Seventh Circuit with the admonition that the use of an administrative summons "solely for criminal purposes is a quintessential example of bad faith." *United States v. LaSalle National Bank,* 554 F.2d 302, 309 (7th Cir.1977), *rev'd,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). In reversing, the Supreme Court concluded that the coincidence between a taxpayer's civil and criminal liability was such that the two could not be untwined prior to referral by the IRS to the Department of Justice for prosecution. Thus, until referral occurs, the pendency of a criminal investigation against the taxpayer does not inhibit the authority of the IRS to conduct investigations pursuant to § 7609. Moreover, the Court continued, the government does not lose its interest in collecting unpaid taxes just because a taxpayer has become the subject of a criminal investigation. Yet, prohibiting the use of administrative summons after referral "is a prophylactic intended to safeguard ... the role of the grand jury as a principal tool of criminal accusation." 437 U.S. at 312, 98 S.Ct. at 2365. Although pre-referral use of the administrative summons is restricted to the good faith limitations of *Powell,* good faith is not abandoned when a summons is used to gather evidence for a criminal investigation. *LaSalle,* 437 U.S. at 314, 98 S.Ct. at 2366.

Contrary to the position taken by the taxpayers here, the good faith that is to be considered in the enforcement proceeding is that of the IRS *as an institution.* *LaSalle,* 437 U.S. at 314, 98 S.Ct. at 2366. Indeed, the Court pointed out, the acts of one person are only a part of the disposition of any case within the Service, and to that extent cannot be used as the sole

---

**6.** The conclusions reached by the trial court comply with these standards.

criterion of the good faith test.[7] In light of the protection accorded a taxpayer by the restrictions imposed upon the IRS, the Court declared that a taxpayer contending the Service has not acted in good faith in the issuance of a summons has a heavy burden in proving his contention. It is within this matrix that we must judge the issues raised by Mr. and Mrs. Anaya.

## IV.

### A.

The taxpayers contend enforcement of the summons in this case would be an abuse of the court's process because the summons were based on improper disclosures of "grand jury material" in violation of Fed.R.Crim.P. 6(e). In support of this argument, taxpayers rely upon *United States v. Baggot*, 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983), and *Gluck v. United States*, 771 F.2d 750 (3d Cir.1985). Neither case is helpful here.

In *Baggot*, after a former grand jury target pled guilty, the government moved under Fed.R.Crim.P. 6(e)(3)(C)(i) for disclosure of grand jury transcripts to aid a civil tax audit by the IRS. The Court held that since a civil audit was not made "in connection with" nor "preliminary to" a judicial proceeding, Rule 6(e)(3)(C)(i) provided no basis for the disclosure.[8] In *Gluck*, the court held that IRS agents who obtained disclosure of "matters occurring before the grand jury" on the basis of a facially valid Rule 6(e)(3)(C)(i) order were not guilty of so tainting the IRS investigation to warrant quashing of administrative summons.[9]

Although tangentially applicable here, neither of these cases aids disposition because they deal with the disclosure of material that was clearly and unquestionably presented to the grand jury. The material with which we deal is more problematic. We turn, then, directly to the keystone issue of whether the information transmitted to IRS agents truly fits the rubric of "grand jury material."

### B.

Proper consideration of the issue first requires recognition of the scope of the secrecy requirement itself. Disclosure of "matters occurring before the grand jury" is prohibited unless authorized by the court. Fed.R.Crim.P. 6(e)(1). Therefore, the use of the term "grand jury materials" in connection with Rule 6(e) disclosures has become misleading and shibbolithic. What we must be concerned with is whether the information given to the IRS actually subverted the secrecy veiling what took place before the grand jury. Helpful to this quest is recollection of the reason for the existence of Rule 6(e).

■■■ As we noted in *United States ex rel. Woodward v. Tynan*, 757 F.2d 1085 (10th Cir.1985) (quoting *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir.1960)), Rule 6(e) does not foreclose for all time revelation to proper authorities some of the same information that had been presented previously to a grand jury. It cannot be overemphasized that the purpose for grand jury secrecy is to protect the sanctity of the proceeding

---

**7.** The Court stated:

> To do so would unnecessarily frustrate the enforcement of the tax laws by restricting the use of the summons according to the motivation of a single agent without regard to the enforcement policy of the Service as an institution. Furthermore, the inquiry into the criminal enforcement objectives of the agent would delay summons enforcement proceedings while parties clash over, and judges grapple with, the thought processes of each investigator.... As a result, the question whether an investigation has solely criminal purposes [lacks good faith] must be answered only by an examination of the institutional posture of the IRS.

437 U.S. at 316, 98 S.Ct. at 2367.

**8.** The rule provides that secret material may be disclosed "when so directed by a court preliminarily to or in connection with a judicial proceeding."

**9.** Taxpayers argue that "three years after the decision in *Baggot*, the government freely admits that it made no attempt to obtain a Rule 6(e) order upon a showing of particularized need as is now required under *Baggot*." They also suggest the government has subverted the rule in this case. Naturally, neither contention has force if the material disclosed was not subject to the rule of secrecy.

and to protect the participants from detrimental publicity. *United States v. Manglitz*, 773 F.2d 1463 (4th Cir.1985). Rule 6(e) is not intended to deter the government from a legitimate investigation, so long as that investigation does not reveal what took place in the grand jury room. With understanding of that purpose, a definition of material protected by the rule becomes much easier.

It is clear from the record that none of the material examined by the IRS was itself presented to the grand jury. Nevertheless, the taxpayers argue that the material was so closely related to what *was* presented that it must fall within the shadow of 6(e). Citing *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368 (D.C.Cir.), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980); *Fund for Constitutional Government v. National Archives*, 656 F.2d 856 (D.C.Cir.1981); and *In re Sealed Case*, 801 F.2d 1379 (D.C.Cir.1986), they contend that disclosure of any information which would reveal the identities of witnesses, the substance of their testimony, the strategy of the investigation, and the deliberations of the grand jury would violate the rule.

Our examination of these cases leads us to a different conclusion. While we do not quarrel with either the reasoning or the conclusions expressed in them, we do not believe they are applicable in this instance.

Both *Fund* and *Sealed Case* involve the request for disclosure under Rule 6(e)(3)(C)(i) of material which had actually been considered by a grand jury. In *Fund*, there was a request under the Freedom of Information Act to release the names of grand jury witnesses; quotes or summaries of grand jury testimony; evaluations of testimony; discussions of the "scope, focus, and direction of the grand jury investigations"; identification of documents considered, and conclusions reached, by the grand jury. *Fund*, 656 F.2d at 869. The court held disclosure of this material was

properly denied because it would have revealed matters occurring before the grand jury. *Id.* In *Sealed Case*, the government sought disclosure under 6(e)(3)(C)(i) of materials that had been subpoenaed by and presented to the grand jury. The court held disclosure was improper in light of a deficient showing of particularized need [10] because the documents revealed "at the very least, the direction of the grand jury's investigation, and the names of the persons involved ..." *Sealed Case*, 801 F.2d at 1381. In both these cases, the court dealt with disclosure of material which itself had actually been before a grand jury. In contrast, the taxpayers here would have us extend the scope of those cases to material which at best deals only in a parallel fashion with subjects that were before the grand jury. We do not believe such an expansive view of Rule 6(e) is warranted.[11]

When documents or other material will not reveal what actually has transpired before a grand jury, their disclosure is not an invasion of the protective secrecy of its proceedings, nor is it an interference with the grand jury as a principal tool of criminal accusation. Indeed, the test of whether disclosure of information will violate Rule 6(e) depends upon "whether revelation in the particular context would in fact reveal what was before the grand jury." *Fund*, 656 F.2d at 871. As we perceive the proper inquiry, a reviewing court must find that disclosure is certain to destroy the protections of Rule 6(e) before it finds a violation of the rule. In contrast, revelation of information that has not been submitted to the grand jury does not vitiate those protections for the simple reason that the information was not part of what transpired in the grand jury room.

As we suggested in *United States ex rel. Woodward v. Tynan*, it is not the information itself, but the fact that the grand jury was considering that information which is protected by Rule 6(e). For that reason, we cannot accept the taxpay-

**10.** *See United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983).

**11.** We find *Dresser* inapposite because it simply refused to apply the *LaSalle* rule limiting IRS summons power to Securities and Exchange Commission subpoenas.

ers' argument that the information disclosed to the IRS agents was "grand jury material" or that disclosure was an act of institutional bad faith of the IRS which mandates the quashing of the summons.

 The IRS was in pursuit of a legitimate investigation, and revelation of information learned by other governmental agencies in a parallel investigation without disclosure of what had been submitted to the grand jury was not improper.[12] *See In re Grand Jury Matter,* 682 F.2d 61 (3d Cir.1982); *In re Grand Jury Investigation,* 610 F.2d 202 (5th Cir.1980); *United States v. Stanford,* 589 F.2d 285 (7th Cir. 1978), *cert. denied,* 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979). We believe there is a clear distinction between a memorandum of the testimony given by a witness before the grand jury and a memorandum of what that person told an investigator outside the grand jury room. While disclosure of the former would violate the secrecy rule, the latter does not.[13] None of the FBI witness memoranda viewed by the IRS agent in this case were summaries of grand jury testimony; hence, they did not and could not disclose matters occurring before the grand jury. We are satisfied that the integrity of the grand jury proceeding was scrupulously protected by all persons, and no violations of Rule 6(e) have occurred.

### V.

Taxpayers contend that the trial court improperly curtailed discovery because it refused to grant them access to the FBI files turned over to the IRS. While the court allowed taxpayers' counsel to question the agents who dealt with these files at length about the contents, it refused counsel's requests for turnover of the files themselves. The court also refused counsel's request that the court inspect the files *in camera.*

 The scope of discovery in the context of an IRS summons enforcement proceeding is discretionary with the trial court. *United States v. Stuckey,* 646 F.2d 1369 (9th Cir.1981), *cert. denied,* 455 U.S. 942, 102 S.Ct. 1436, 71 L.Ed.2d 653 (1982). Taxpayers have failed to establish an abuse of that discretion. The trial court balanced the sensitive nature of the FBI's investigative file against the taxpayers' inability to demonstrate the probability of a Rule 6(e) violation and properly curtailed discovery of the entire file. Because there was ample testimony of the contents of those files, and because that testimony presented no predicate for further disclosure, we will not disturb the trial court's ruling.[14]

### VI.

Taxpayers finally argue that the IRS issued their administrative summons in order to collect information for the Department of Justice. The evidence simply fails to support this argument.

 The record indicates, and the trial court so found, that the IRS proceeded upon its own investigation in this matter. Although taxpayers argue to the contrary, their contentions were presented to the trier of fact, who found against them. That finding is clearly supported by the record, and appellants have not proven that it was

---

**12.** To the extent the cover letter indicating names of persons to be subpoenaed is concerned, we believe the disclosure was inadvertent and problematic. Whether those persons actually appeared before the grand jury is not clear in the record. Yet, we do believe it to be straining at gnats to quash the summons in this case on the prospect that an IRS agent learned the names of two people who might have appeared before the grand jury. We find the "green sheet" an even more remote connection to what occurred before the grand jury because it contained no revelation of the substance of the exhibit to which it referred.

**13.** We therefore disagree with the contrary conclusion reached in *United States v. Armco Steel Corp.,* 458 F.Supp. 784 (W.D.Mo.1978).

**14.** Taxpayers argue in part that because the trial court excised some of the discovery testimony, there is an implication that the court believed the files contained material subject to Rule 6(e). We have examined the sealed record and believe that although the court may have acted in an abundance of caution by excising the testimony, the action was otherwise unnecessary. We do not believe any of the testimony revealed what occurred before the grand jury; hence, it was not within the ambit of 6(e).

clearly erroneous. It therefore must stand. *United States v. Sain*, 795 F.2d 888 (10th Cir.1986).

The judgment of the district court is AFFIRMED, and all stays heretofore entered are dissolved. The mandate shall enter forthwith.