**UNITED STATES of America**

v.

**Edward J. REINERS, et al.**

**Crim. Action No. 96–98–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

June 26, 1996.

Helen F. Fahey, United States Attorney, Gordon D. Kromberg, John Klein, Assistant United States Attorneys, Alexandria, Virginia, for U.S.

Judd Burstein, Burstein & Fass, LLP, New York City, for Ruffo and CCS, Inc.

Robert Roussos, Roussos and Langhorne, Norfolk, Virginia, for Reiners and Worldwide Regional.

Eric Hayes, State Street Global Advisors, Boston, Massachusetts, for trustee State Street Bank.

Joseph B. Tompkins, Jr., Sidley & Austin, Washington, D.C., for NationsBank.

George J. Terwillinger, III, McGuire Woods Battle & Boothe, LLP, Washington, D.C., for Signet Bank.

Robert W. Kleinman, Ross & Hardies, Chicago, Illinois, for Hitachi Credit American Corp.

Nancy Swift, Simpson Thacher & Bartlett, New York City, for Long Term Credit Bank of Japan.

Edward S.G. Dennis, Jr., Morgan, Lewis & Bockius, LLP, Philadelphia, Pennsylvania, for CoreStates Bank, N.A.

William M. Silverman, Otterbourt, Steindler, Houston & Rosen, P.C., New York City, for Creditanstalt.

John Shay, IBM Credit Corp., Stamford, Connecticut, for IBM Credit Corp.

### *ORDER*

ELLIS, District Judge.

In what may be one of the largest, most audacious, single frauds in American history, the question has arisen whether bank records relating to disposition of the fraud proceeds, which records were obtained by a grand jury subpoena, are "matters occurring before the grand jury" and thus subject to the secrecy provisions of Rule 6(e), Fed. R.Crim.P.

---

## I

The facts of this case reveal a fraud as brazen as it was large. Edward Reiners, posing as an official of Philip Morris, approached Nelco, a computer leasing firm, about acquiring and financing a large amount of computer equipment. Reiners represented himself to be the Chief Operating Officer for a secret Philip Morris project entitled "Project Star." He explained that Project Star was a large research effort designed by Philip Morris to study the long term effects of smoking and to develop a "smokeless" cigarette. He emphasized that it was important for the project to be conducted in the strictest confidence, and hence the work would be carried out at five secret research sites in Central America, Asia, and Europe. Each site would require very large quantities of sophisticated computer equipment. Reiners sought Nelco's aid in acquiring and financing this equipment.

Ultimately, Reiners, with Nelco's assistance, persuaded several banks, including movant Signet Bank, to lend money to Nelco to purchase the computers from CCS, Inc., a New York computer reseller and Reiners' co-conspirator in the scheme. The plan contemplated that Nelco, acting as a broker, would then lease the computers to Philip Morris for use at the various project research sites. Pursuant to this plan, the banks disbursed funds directly to CCS, which was then supposed to ship the computers to the various project sites. After an appropriate interval, Reiners would inform the banks and Nelco that the computers had been delivered to the sites. In fact, no computers were ever purchased or delivered; instead, Reiners, with CCS's complicity, diverted the loan proceeds for his personal benefit; he invested the funds in real estate, stocks, and other securities. In all, the victim banks were defrauded of approximately $317 million.[1]

A grand jury was empaneled to investigate this fraud. In the course of its investigation, the grand jury subpoenaed bank and securities account records from various financial institutions. Signet Bank, one of the victim banks in this fraud, seeks access to those records in order to trace the loan proceeds. The government apparently is willing to disclose that information to Signet and the other victim banks but is hesitant to do so because of a concern that the records may be subject to the secrecy provisions of Rule 6(e), Fed.R.Crim.P. Signet accordingly brings this motion for limited disclosure of investigative material, seeking a ruling (i) that the financial information is not subject to Rule 6(e), and (ii) that the government may share that information with the victim banks.

## II

The threshold question presented is whether the documents Signet seeks to review are governed by Rule 6(e), Fed.R.Crim.P. That rule provides that "an attorney for the government ... shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules." Rule 6(e)(2), Fed.R.Crim.P. Signet contends that the financial records subpoenaed by the grand jury which it seeks do not constitute "matters occurring before the grand jury" for purposes of the Rule.[2]

---

1. On June 5, 1996, Reiners pled guilty to a two-count Criminal Information charging him with bank fraud, in violation of 18 U.S.C. § 1344, and money laundering, in violation of 18 U.S.C. § 1956. Reiners also agreed to an order of forfeiture of the proceeds of, and funds traceable to the proceeds of, the bank fraud and money laundering. Prior to the guilty plea, this Court entered an Order seizing various assets of Reiners and his co-conspirators totaling more than $200 million. A substantial portion of the assets were in the form of various types of securities. The Court then appointed a Trustee to liquidate the securities in a timely manner and to transfer the proceeds to the U.S. Marshal's Service in the form of Treasury Bills. See United States v. Reiners, Crim. No. 96–98–A (E.D.Va. April 8, 1996).

To date, all but approximately $23 million of the seized assets have been converted to cash or Treasury Bills.

2. In passing, Signet also asserts that if necessary it could establish that even if the records were "matters occurring before the grand jury," disclosure would nonetheless be appropriate under Rule 6(e)(3)(C)(i), which permits disclosure "when so directed by a court preliminarily to or in connection with a judicial proceeding." Id. It appears that Signet is a party to at least two other actions related to this fraud and may seek to make such a showing in those cases. See Signet Bank v. Hitachi Credit America Corp. et al., Civ. No. 96–342–R (E.D.Va. filed April 22, 1996); CoreStates Bank, N.A. v. Signet Bank, Civ. No.

The Rule does not define "matters occurring before the grand jury." Accordingly, courts have sensibly determined whether documents or other materials fit within the boundaries of the phrase by reference to the purposes underlying the Rule's secrecy provisions. *See, e.g., In re Grand Jury Proceedings,* 851 F.2d 860 (6th Cir.1988). These purposes, as the Supreme Court has recognized, are fourfold:

[1.] First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony.

[2.] Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as inducements.

[3.] There also would be a risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against the indictment.

[4.] Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

*Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 219, 99 S.Ct. 1667, 1673, 60 L.Ed.2d 156 (1979). Guided by these purposes, courts have developed two similar, but slightly different, tests for determining whether particular documents are "matters occurring before the grand jury." [3] Some courts have adopted the "purpose" test, which exempts documents from Rule 6(e)'s secrecy requirements "when testimony or data is sought for its own sake—for its intrinsic value in the furtherance of a lawful investigation—rather than to learn what took place before the grand jury." *United States v. Interstate Dress Carriers, Inc.,* 280 F.2d 52, 54 (2d Cir.1960). The second, more popular judicial approach focuses on the practical consequences of disclosing the requested material. "These decisions call for a factual inquiry into whether disclosure of particular subpoenaed documents will tend to reveal some secret aspect of the grand jury's investigation." *In re Doe,* 537 F.Supp. 1038 (D.R.I.1982).[4]

The Fourth Circuit has not addressed this issue and so it is unclear which of the two tests, if either, it would follow. Yet the second approach appears more sensible, as it is more likely to give full effect to the Rule's purposes. The mere fact that the party's objective in seeking access to grand jury documents is to conduct its own investigation is no guarantee that the purposes underlying Rule 6(e) would not be thwarted. The Rule's purposes are better met, as the second approach requires, by inquiring into the actual effects of disclosure.

In any event, it is unnecessary to choose between the two approaches in this case, because the requested materials do not constitute "matters occurring before the grand jury" under either test. With respect to the first test, Signet's purpose in seeking access to these documents is not to gain insight into the grand jury proceedings themselves; rather, Signet seeks access to the documents

96–3199 (E.D.Pa. filed April 23, 1996). Yet no such demonstration is made here and the Court does not reach this issue.

**3.** Some courts have adopted "all-or-nothing" positions. A few have suggested that documentary evidence is never 6(e) material. *See, e.g., In re Grand Jury Investigation of Ven–Fuel,* 441 F.Supp. 1299, 1303 (M.D.Fla.1977). This position is unpersuasive, since in certain circumstances documentary evidence may well reveal almost as much about who said what before the grand jury as does grand jury testimony itself. Other courts have held that documents presented to the grand jury are always 6(e) material. *See, e.g., In re Grand Jury Disclosure,* 550 F.Supp. 1171 (E.D.Va.1982). This position is also unpersuasive, for there are surely instances where certain documents subpoenaed by a grand jury, if disclosed, would not tend to reveal any secret aspect of the grand jury's investigation. *See, e.g., SEC v. Dresser Industries,* 628 F.2d 1368, 1383 (D.C.Cir.1980).

**4.** *See also In re Grand Jury Proceedings (Miller Brewing Co.),* 687 F.2d 1079, 1090 (7th Cir. 1982), *aff'd on rehearing,* 717 F.2d 1136 (7th Cir.1983); *Fund for Constitutional Government v. National Archives & Records Service,* 656 F.2d 856, 869–70 (D.C.Cir.1981); *In re Grand Jury Investigation,* 630 F.2d 996, 1001 (3d Cir.), *cert. denied,* 449 U.S. 1081, 101 S.Ct. 865, 66 L.Ed.2d 805 (1980).

to trace the loan proceeds and to identify assets in which Signet may have an interest. With respect to the second test, disclosure would not have the effect of breaching grand jury secrecy because the documents, by their nature, would not reveal any secret aspect of the grand jury investigation. Thus, the documents sought are records from various financial institutions through which the fraudulently obtained loan proceeds passed during 1993–96. All of the documents were created prior to any criminal investigation and reveal only that certain assets were transferred from one account to another. Such records provide no information as to the identity of the witnesses who testified before the grand jury or the nature of their testimony. At most, the documents reflect the path traveled by certain of the fraudulently obtained loan proceeds. Of course, the documents may also reflect Reiners' role in the fraud, a fact already in the public record. Accordingly, under either test the documents Signet seeks are not "matters occurring before the grand jury."

Yet this does not end the inquiry, for Signet also seeks a ruling that the government may disclose the documents to Signet and the other victim banks. Such a requested ruling goes well beyond the Rule 6(e) issue raised in the motion; it calls for the Court to determine whether Signet has any right in these or other proceedings to obtain the documents and whether there may be some right of confidentiality or privacy of another entity in the documents. None of these matters is raised here, and this Order determines merely that the documents are not "matters occurring before the grand jury" for purposes of Rule 6(e) and nothing more. In sum, whether Signet is entitled to have access to these documents is not an issue properly presented and argued in this motion and is therefore not decided.

Accordingly, Signet's motion is **GRANTED IN PART AND DENIED IN PART.** It is **GRANTED** insofar as the Court rules that the brokerage and banking records relating to the disposition of the loan proceeds in this case are not "matters occurring before the grand jury" and therefore are not subject to the secrecy requirements of Rule 6(e), Fed.

R.Crim.P. It is **DENIED** insofar as Signet seeks a ruling that the government may disclose the financial information to the victim banks.