In re **GRAND JURY PROCEEDINGS.**

No. 1:07dm405.

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 7, 2007.

Timothy D. Belevetz, Esquire, United States Attorney's Office, Alexandria, VA, for Movant United States of America.

Terrance G. Reed, Esquire, Lankford, Coffield & Reed, Alexandria, VA, for Movant Christopher Benyo.

Bruce C. Bishop, Esquire, Steptoe & Johnson LLP, Washington, DC, for Movant John Tuli.

Kerri L. Ruttenberg, Esquire, LeBoeuf, Lamb, Green & MacRae LLP, Washington, DC, for Movant Kent D. Wakeford.

## OPINION

KELLEY, District Judge.

The United States, acting through the Department of Justice ("DOJ") and the Securities and Exchange Commission ("SEC"), has petitioned this Court to make public substantial amounts of grand jury material generated in connection with a now-completed investigation into the accounting practices of America Online, Inc. ("AOL"). Because the government has not shown a particularized need for the grand jury materials it seeks released, the petition is **DENIED**. However, DOJ may provide to its counterparts at the SEC reports of the proffer sessions that prosecutors conducted with Christopher Benyo. These reports, which were recorded on a FBI Form 302 (the "302s"), do not constitute "a matter occurring before the grand jury" that is protected from disclosure by Fed.R.Crim.P. 6(e)(2)(B).

### I. *Facts and Procedural History*

On January 10, 2005, a grand jury sitting in the Eastern District of Virginia indicted defendants Charles Johnson, Jr., Christopher Benyo, John Tuli, Kent Wakeford, Michael Kennedy, and Scott Wiegand on charges of conspiracy, securities fraud, wire fraud, and obstruction of justice. *United States v. Benyo, et al.,* Crim. Action No. 1:05cr12 (E.D.Va.). On the same day, the SEC alleged the same facts in an enforcement action filed in the United States District Court for the District of Columbia against most of the same defendants.[1] *SEC v. Johnson, et al.,* Civ. Action No. 1:05cv36 (D.D.C.) (the "Enforcement Action"). The Indictment and Enforcement Action represented the culmination

of a massive investigation into the accounting practices of AOL and several other companies, including PurchasePro.com, Inc. At the request of the SEC and DOJ, and over the objections of defendants, the Enforcement Action was stayed pending resolution of the criminal charges.

The Indictment and Enforcement Action were coordinated events that DOJ and the SEC publicized heavily. U.S. Securities and Exchange Commission, Litigation Release No. 19029 (Jan. 10, 2005) *available at* www.sec.gov/litigation/litrelease/lr19029.htm.[2] These filings received extensive coverage in the mainstream media. *See, e.g.,* James Bandler & Julia Angwin, *PurchasePro.com, AOL Ex–Officials Face Fraud Case,* Wall St. J., Jan. 11, 2005, at A3; Alec Klein & Jerry Markon, *6 Indicted in AOL Accounting Case,* Wash. Post, Jan. 11, 2005, at E1. These coordinated press releases and extensive publicity proved to be the high point of the government's case.

Initially, this Court vacated an *ex parte* freeze of defendants' assets pending trial. *United States v. Benyo,* 384 F.Supp.2d 909 (E.D.Va.2005). The Court then severed defendant Scott Wiegand from the rest of the defendants and acquitted him after a bench trial. (Criminal Action No. 1:05cr12 (E.D.Va.), Docket No. 280.) A jury was empaneled to hear the case against defendants Benyo, Johnson, Tuli and Wakeford. After a trial that lasted more than three months, the jury acquitted defendants Benyo, Tuli, and Wakeford.[3] (*Id.,* Docket Nos. 689–94.) Finally, DOJ voluntarily dismissed all criminal charges brought

---

**1.** Scott Wiegand was not a defendant in the Enforcement Action.

**2.** DOJ released a similar press release the same day as the SEC. That press release has mysteriously disappeared from DOJ's website.

**3.** The Court declared a mistrial as to defendant Johnson. He will go to trial in October 2007.

against defendant Kennedy. (*Id.*, Docket Nos. 706–07.)

Despite these setbacks, the SEC decided to pursue its Enforcement Action against the acquitted defendants. In essence, it seeks to prove by a preponderance of the evidence that which DOJ was unable to prove beyond a reasonable doubt.

Prosecution of the Enforcement Action resumed approximately one month after the jury acquitted defendants Benyo, Tuli and Wakeford. Upon motion of the SEC, the United States District Court for the District of Columbia (Kessler, J.) (the "D.C. Court") vacated its stay. Although the underlying facts had been investigated for two years by a grand jury and aired thoroughly in the course of more than three months of criminal testimony, the SEC sought additional discovery. Over the strong objection of the defendants, the D.C. Court acquiesced and scheduled the Enforcement Action for trial in February 2008. *SEC v. Johnson*, Civ. Action No. 1:05cv36, 2007 WL 2071679, at *1–2, 2007 U.S. Dist. LEXIS 50679, at *3–4 (D.D.C. July 13, 2007).

The SEC demanded other pretrial concessions in the Enforcement Action. The SEC initially sought leave to conduct more than the ten depositions allowed by Fed. R.Civ.P. 30(a)(2)(A) and further asked to exceed the seven hour per deposition limit imposed by Fed.R.Civ.P. 30(d)(2). The SEC later requested that it be allowed two additional hours of redirect in the deposition of a key witness under its control. The D.C. Court denied these requests, *see* 2007 WL 2071679, *1–2, 2007 U.S. Dist. LEXIS 50679, at *5–6; Mem. Order of July 10, 2007 at 2, *SEC v. Johnson*, Civ. Action No. 1:05cv36 (D.D.C.), calling the SEC "unreasonable" and "arrogant." Approximately one month ago, the D.C.

Court stated that "[i]t is time for the SEC to get to work, start working cooperatively and reasonably with defense counsel, ... and do its job to get ready for trial." 2007 WL 2071679, at *3, 2007 U.S. Dist. LEXIS 50679, at *8–9.

Stymied in its effort to expand discovery in the Enforcement Action, the government now asks this Court to make public grand jury materials from the criminal investigation.[4] DOJ initially requested that the Court authorize a wholesale disclosure of all grand jury materials to the SEC. At a hearing conducted on July 25, 2007, the Court denied this request because DOJ has no standing to move on behalf of the SEC, *United States v. Sells Eng'g*, 463 U.S. 418, 431, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983) (stating that the agency seeking disclosure of grand jury material must establish a need for the material in its own case), and wholesale disclosure would be inconsistent with the requirement that a movant must show a "particularized need" for grand jury materials.

The government subsequently amended its request. Lead counsel for the SEC has now submitted a Declaration purporting to establish particularized need and narrowing the scope of the request from wholesale disclosure to the disclosure of all grand jury materials involving 17 individuals that the defendants identified in their Initial Disclosures as persons with knowledge. (Declaration of David. J. Gottesman, Esq., filed Aug. 2, 2007.) These materials include Form 302 interview reports, transcripts of the individuals' grand jury testimony, and all exhibits related either to the transcripts or to the 302s. It thus appears that the SEC has changed its position from wanting all of all of it to just wanting all of some of it.

---

4. "A petition to disclose a grand jury matter ... must be filed in the district where the grand jury convened." Fed.R.Crim.P. (6)(e)(3)(F).

Five of the seventeen individuals identified by the SEC are defendants Johnson, Benyo, Wakeford, Tuli, and Kennedy. Johnson, Wakeford, Tuli, and Kennedy previously gave interviews on the record in 2002 pursuant to SEC investigative subpoenas.[5] Since the stay of the Enforcement Action was lifted in March 2007, the SEC has also deposed or noticed the deposition of all defendants except Mr. Johnson. In addition, Mr. Wakeford testified for more than two days at his criminal trial, although his cross examination by a DOJ "senior" trial attorney was less than rigorous.

The other twelve individuals listed by the SEC appear to be either former employees of the subject companies, or employees of companies that did business with PurchasePro and AOL. DOJ did not call any of these individuals to testify in the three-month criminal trial, and no party has advised the Court of what testimony, if any, they have to offer.

## II. *Analysis*

### A. *The SEC Has Not Established a Particularized Need for Grand Jury Materials*

■ Rule 6(e)(2)(B) of the Federal Rules of Criminal Procedure prohibits certain persons (including prosecutors) from disclosing "matters occurring before the grand jury." The purposes of grand jury secrecy are: (1) to ensure that potential witnesses come forward and testify fully and truthfully; (2) to prevent the target of a grand jury investigation from fleeing; and (3) to protect the reputation of wrongfully accused individuals. *United States v. Reiners,* 934 F.Supp. 721, 723 (E.D.Va. 1996) (Ellis, J.) (citing *Douglas Oil Co. v. Petrol Stops Nw.,* 441 U.S. 211, 219, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979)). Not all

of these goals would be vindicated by continuing to keep secret the proceedings of this grand jury. The grand jury term has expired, and DOJ advises that there is no ongoing investigation. Nonetheless, defendant Johnson remains to be tried, and the Court must be mindful of the need to assure future grand jurors and witnesses that grand jury proceedings will remain secret absent compelling justification for disclosure. *Douglas Oil,* 441 U.S. at 222, 99 S.Ct. 1667; *United States v. Smith,* 123 F.3d 140, 148 (3d Cir.1997).

■ The district court overseeing a grand jury may waive Rule 6(e)'s secrecy requirement if the movant establishes a "particularized need" for certain grand jury information. *Douglas Oil,* 441 U.S. at 222, 99 S.Ct. 1667. To do this, the movant must demonstrate that: " (1) the materials are needed to avoid an injustice in another proceeding; (2) the need for disclosure is greater than the need for continued secrecy; and, (3) the request is structured to cover only needed materials." *United States v. Moussaoui,* 483 F.3d 220, 235 (4th Cir.2007).

The SEC offers four general arguments to establish particularized need. First, the SEC states that the Rule 6(e) material is necessary "in order to prepare for trial" and to "prepare for examination or cross-examination of the potential trial witnesses." (Decl. at ¶ 8.) Second, the SEC asserts that the grand jury materials are otherwise unavailable because the D.C. Court has denied the SEC's request for extra and lengthier depositions. (Decl. at ¶ 9.) Third, the SEC argues the potential for faded memories at trial establishes a particularized need for testimony and statements made closer in time to the events at issue. *Id.* Finally, the Declara-

---

5. The SEC interviewed on the record a total of 137 individuals between 2002 and 2005 in connection with its investigation of AOL and PurchasePro.

tion suggests that the sum of all of these arguments amounts to particularized need. (Decl. at ¶ 10.) None of these arguments is sufficient to overcome the fact that "secrecy of grand jury proceedings is a necessary incident to the proper functioning of the grand jury system." *Smith*, 123 F.3d at 148.

### 1. A Hypothetical Need to Impeach or Refresh Recollection Does Not Justify Waiving Grand Jury Secrecy

With regard to the first basis for the petition, that the material is necessary to prepare for trial and for the examination of witnesses, the Court takes this to be distinct from a discovery-related need. In other words, the SEC does not need the Rule 6(e) material to learn more about the events that give rise to the Enforcement Action. Rather, the SEC requests the material for trial purposes such as scripting examinations, refreshing recollections, and impeachment.[6]

The Supreme Court recognized in *Douglas Oil* that uses such as impeachment, refreshing recollection, and testing credibility are "the typical showing of particularized need." 441 U.S. at 222 n. 12, 99 S.Ct. 1667 (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 683, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958)). The SEC argues that these purported needs tilt the Rule 6(e) balancing in favor of disclosure because the grand jury investigation has long since concluded and the need for continued secrecy is therefore diminished.

■■■ Merely intoning the words "impeachment" and "refreshing recollection" like a talismanic password does not entitle a movant to Rule 6(e) material. The movant still must demonstrate a concrete, nonethereal need. To hold otherwise would automatically entitle parties in a civil case to grand jury material any time a companion criminal trial has already concluded. As the Supreme Court noted in *Douglas Oil*, "the interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities." *Id.* at 222, 99 S.Ct. 1667.

■■■ The SEC has established nothing more than "something might come up" with respect to Rule 6(e) materials involving the seventeen individuals. This is not enough to establish particularized need. *United States v. Chase*, 372 F.2d 453, 466 (4th Cir.1967) ("[T]he mere *possibility* that [a witness's] testimony before a grand jury differed from his testimony at trial[ ] would be insufficient reason to pierce the veil of secrecy which protects the proceedings of such a body.") (emphasis in original). All litigants run the risk that a witness might testify inconsistently at trial or claim a faded memory, but this ubiquitous fear does not establish particularized need. The SEC has failed to establish that any of the 17 individuals are more likely to testify inconsistently or claim faded memory than the average witness.[7] Moreover, as the Court discusses below in more detail, the SEC is responsible for the

---

**6.** The Court commends the SEC for drawing this reasonable distinction. In light of the massive investigation that preceded the filing of the Enforcement Action and criminal charges, the more than three combined months of testimony at the criminal trials, and the discovery that the SEC is legitimately entitled to under the Federal Rules, any suggestion that an informational stone has been left unturned would be ludicrous.

**7.** The SEC does assert that Mr. Benyo could not recall during his most recent deposition some details of events that occurred more than six years ago. Although unsurprising, this concrete information comes closer to establishing a particularized need. However, the Court need not answer this question because, as explained *infra*, the information sought as to Mr. Benyo is not Rule 6(e) material.

massive delay between the events in question and the 2008 trial, so any faded memories are the natural consequence of the SEC's litigation strategy.

More fundamentally, there is no indication whether any or all of the 17 individuals will actually testify at trial. They are simply listed as individuals who might have information related to the issues in question. While it is reasonable to expect that some or all of the criminal defendants might be called to testify in the civil trial,[8] it is not at all certain that the other 12 individuals will testify. DOJ put on numerous witnesses during the criminal case. Presumably, these witnesses were the best ones to discuss the allegations contained in the Indictment and the SEC's Complaint. Many of the individuals identified in the SEC's Declaration were never mentioned during the three and one-half months of testimony in the criminal trial. If someone did not testify, and indeed was never mentioned, at the criminal trial, it is doubtful that the individual will testify in the Enforcement Action. The Court simply cannot justify waiving grand jury secrecy on the basis that someone who *might*, but probably will not, testify at trial *might* testify inconsistently or have a faded memory.

### 2. The D.C. Court's Discovery Rulings Do Not Give Rise to Particularized Need

■ The SEC next argues that prior statements of many of the 17 individuals are otherwise unavailable because the D.C. Court has limited the SEC to ten depositions. Although the SEC must be commended for its candor in admitting that it is simply trying to end-run the D.C.

Court's rulings, this claim nevertheless reflects an arrogance upon which the D.C. Court has already commented. A civil litigant is no more entitled to grand jury material than it is entitled to more than ten depositions. Having to operate under the same rules of discovery as all other litigants does not create a particularized need for secret grand jury material.

Moreover, the SEC has chosen to allocate its depositions in a way that cuts against its own argument for particularized need. The SEC has deposed Benyo, Tuli, Wakeford, and Kennedy. All of these individuals testified before the SEC prior to the Indictment being handed up. Wakeford also testified at the criminal trial. At least six other people who testified at length at the criminal trial have testified by deposition in the Enforcement Action. If the information known by the twelve remaining individuals was truly important to the SEC, it would have deposed them rather than replowing well-furrowed ground. That it did not use its limited depositions on these individuals speaks volumes of their unimportance.

### 3. The Potential for Faded Memory Does Not Establish Particularized Need Because the SEC Caused the Delay

■ By the time the Enforcement Action goes to trial in 2008, roughly seven years will have elapsed since the events in question, so memories may have faded. Grand jury materials might therefore be useful to refresh recollections because they were prepared in 2003 and 2004. According to the SEC, this potential need to refresh recollections establishes a particularized need for the grand jury materials.

**8.** As stated above, Benyo, Tuli, Wakeford, and Kennedy all either gave on the record interviews with the SEC in 2002 or have been deposed since being acquitted of the criminal charges, or both. This mountain of prior statements is more than enough to impeach or refresh recollection at the civil trial.

This claim bespeaks the arrogance noted above. The SEC joined in DOJ's request to stay the Enforcement Action during the pendency of the criminal case. The defendants objected to the stay. Then, when the D.C. Court finally lifted the stay, the SEC requested a significant delay. The defendants again objected. The predicament, if any, in which the SEC finds itself is of its own making. How can the Court justify breaching the secrecy of the grand jury to save the SEC from the consequences of its own litigation strategy? The answer is that no such justification exists. Litigants cannot claim particularized need when their own action created the need in the first place.

### 4. *The Sum of The Grounds Set Forth in the Declaration also Fails to Amount to Particularized Need*

 Although none of the SEC's arguments individually establish a particularized need for grand jury materials, the Declaration suggests that the sum of the arguments makes the requisite showing. This argument is unavailing because the sum of faulty parts does not create a working machine. Before filing a Complaint, plaintiffs must decide whether they will be able to prove their case under the generally applicable rules of discovery and trial practice. No plaintiff can reasonably expect to have access to secret grand jury materials, just as no plaintiff can reasonably expect to be allowed more than ten depositions or more than seven hours per deposition. Instead, plaintiffs must live with the case they file. Realizing that a case is weak because the theories have been rejected in another forum does not create a particularized need for additional material. These general principles apply to the SEC just as they do to any other civil litigant.

The *sine qua non* of waiving grand jury secrecy is the need to prevent injustice. *Douglas Oil*, 441 U.S. at 221, 99 S.Ct. 1667 ("[The] party seeking to obtain grand jury transcripts must demonstrate that without the transcript a defense would be greatly prejudiced or that without reference to it an injustice would be done."). One could identify several injustices that have occurred in the course of. these proceedings, but the SEC's lack of access to grand jury material would not join their ranks.

### B. *The 302s Produced After Mr. Benyo's Proffer Sessions Do Not Fall Within Rule 6(e)'s Protection*

That the Court declines to make public grand jury material involving the seventeen witnesses does not mean that all of the material the SEC seeks is protected by Rule 6(e). The 302s of defendant Christopher Benyo's proffer sessions are a case in point. Mr. Benyo voluntarily appeared for the proffer sessions in return for being excused from a grand jury subpoena. The parties negotiated a proffer agreement that limited the manner in which prosecutors could use Mr. Benyo's statements. Pursuant to this agreement, Mr. Benyo met twice with prosecutors and FBI agents. The FBI turned its notes from these meetings into Form 302 interview reports. DOJ wishes to give copies of these 302s to the SEC. Mr. Benyo argues that the 302s are grand jury materials subject to Rule 6(e)'s protection.

Rule 6(e), by its own terms, covers only "matter[s] occurring before the grand jury." Fed.R.Crim.P. 6(e)(2)(B). However, courts have construed this language broadly to mean that "Rule 6(e) applies to anything which may reveal what occurred before the grand jury." *United States v. Smith*, 123 F.3d 140, 148 (3d Cir.1997) (internal quotations omitted). Thus, it is well settled "that Congress intended for its

confidentiality provisions to cover matters beyond those actually occurring before the grand jury." *Id.* at 149. Just how far Rule 6(e)'s protection extends depends upon the facts of a given case.

Some courts have construed Rule 6(e)'s scope broadly to cover information that might reveal the identities of witnesses or grand jurors, the substance of witness testimony, investigation strategy or grand jury deliberations. *Fund for Constitutional Gov't v. Nat'l Archives*, 656 F.2d 856, 869 (D.C.Cir.1981); *Linn v. United States Dep't of Justice*, Civ. Action No. 92–1406, 1995 WL 631847, at *29–30, 1995 U.S. Dist. LEXIS 12935, at *83–84 (D.D.C. Aug. 22, 1995) (stating that material produced for investigatory purposes concurrent with a grand jury investigation is protected by Rule 6(e)). Mr. Benyo urges the Court to adopt this standard. If it were adopted, the 302s would be Rule 6(e) material because they were produced at the same time as the grand jury investigation, and discuss individuals and subject matters that were also in front of the grand jury.

 Other courts, including the Fourth Circuit, have read Rule 6(e)'s sweep more narrowly. *E.g., Anaya v. United States*, 815 F.2d 1373, 1378 (10th Cir.1987) ("[T]he term 'grand jury materials' ... has become misleading and shibbolithic."); *In re Grand Jury Matter (Catania)*, 682 F.2d 61, 64 (3d Cir.1982) ("[I]nformation developed by the FBI, although perhaps developed with an eye toward ultimate use in a grand jury proceeding, exists apart from and was developed independently of grand jury processes."); *see also In re Grand Jury Subpoena (Under Seal)*, 920 F.2d 235, 241 (4th Cir.1990) (citing *Anaya* and *Catania* favorably); *United States v. Rosen*, 471 F.Supp.2d 651, 655 (E.D.Va.2007) (Ellis, J.) (cautioning against an expansive reading of Rule 6(e)). The key to determining whether something is grand jury material is "whether the information ... [would] actually subvert[] the secrecy veiling what took place before the grand jury." *Anaya*, 815 F.2d at 1378. Accordingly, "[w]hen documents or other material will not reveal what actually has transpired before a grand jury, their disclosure is not an invasion of the protective secrecy of its proceedings" and "it is not the information itself, but the fact that the grand jury was considering that information which is protected by Rule 6(e)." *Id.* at 1380–81.

 The Benyo 302s do not reveal what testimony and documents were presented to the grand jury. They simply recount what Mr. Benyo remembered about the incidents in question. Nor were the 302s prepared in anticipation of Mr. Benyo testifying in front of the grand jury. Indeed, the very terms of the proffer agreement prohibit Mr. Benyo's statements from being revealed to the grand jury that was investigating him. At best, the proffer sessions could have given the prosecutors leads to pursue. However, as the *Catania* court found, this does not bring the 302s within the scope of Rule 6(e) because the interview reports do not reveal whether any leads were, in fact, ever pursued before the grand jury.

### III. *Conclusion*

For the reasons stated above, the Court **FINDS** that the SEC has failed to establish a particularized need for the grand jury material and therefore **DENIES** the SEC's petition. The Court further **FINDS** that the FBI Form 302 reports created after Mr. Benyo's voluntary proffer sessions are not "a matter occurring before the grand jury" for purposes of Fed.

R.Crim.P. 6(e). The Court will enter an appropriate Order.